A00A0839. ALLEN v. COLUMBUS BANK & TRUST COMPANY.
(534 SE2d 917)

JOHNSON, Chief Judge.

This case involves the alleged mismanagement of a trust. The record shows that Sally Allen's father died on July 20, 1968. His will provided for a trust for his wife and children. It further provided that his wife and Columbus Bank & Trust Company ("CB&T") were to be co-trustees of the trust. Allen's mother and CB&T acted as co-trustees of the trust from July 1968 until September 15, 1972, when CB&T became the sole trustee of the trust. CB&T managed the trust from 1972 until the trust terminated by its own terms at the death of Allen's mother on July 26, 1985. Ten years and two months later, on September 22, 1995, Sally Allen filed the present lawsuit against CB&T, alleging that CB&T, as trustee for her father's trust, breached the trust and its fiduciary duty to her as a beneficiary of the trust.

Allen maintains that CB&T negligently or intentionally mismanaged the trust, causing it to lose from $1 million to $2 million over the life of the trust. CB&T maintains that Allen's suit is barred because it was untimely filed. The trial court agreed with CB&T and granted its motion for summary judgment. Allen appeals from this ruling.

1. It is undisputed that Allen's claims, if any, accrued prior to July 1, 1991, the date upon which a new six-year statute of limitation for breach of trust became effective. As such, the timeliness of her action is governed by OCGA § 9-3-27, which provides that all actions against fiduciaries must be brought within ten years after the right

of action accrues.[1] The question we must first address is when Allen's right of action accrued.

Allen claims that mismanagement of a trust is a continuing tort and that the ten-year statute of limitation did not begin to run until the trust corpus was disbursed on June 26, 1986, approximately one year after the trust terminated by its own terms. This argument is without merit, inasmuch as the Supreme Court has ruled that the continuing tort theory is applicable only to cases involving personal injury.[2]

A cause of action for breach of fiduciary duty in the management of a trust, as we have here, begins to run at the time the wrongful act accompanied by any appreciable damage occurs.[3] Applying this principle to the present case, it is clear that each time CB&T made an investment which Allen deems to have constituted mismanagement, the trust was detrimentally affected, a cause of action accrued in favor of Allen, and the ten-year statute of limitation began to run. Thus, we must look to Allen's specific claims of acts of mismanagement to determine when her causes of action accrued.

In her complaint, Allen lists eight examples of alleged mismanagement. These purported acts of mismanagement occurred between the time CB&T began managing the trust in 1968 and August 23, 1985. Since all these acts of mismanagement occurred more than ten years before Allen filed her complaint on September 22, 1995, Allen's action is barred by the statute of limitation unless she can show that the statute was tolled.

In her appellate brief, Allen claims she was excused from filing her suit within the statute of limitation period because CB&T intentionally withheld information from her which would have allowed her to discover her causes of action. However, this statement is belied by her own deposition testimony. Allen admitted she regularly received account statements and investment review statements the entire time CB&T managed the trust. She further admits that during the life of the trust, she never read the statements. Most importantly, Allen admits that these very statements formed the basis for her lawsuit:

Q: All of the data that you complain about in this lawsuit was revealed at one time or another on the trust statements

---

[1] In 1991, the Georgia legislature specifically removed trustees from the ten-year statute of limitation imposed by OCGA § 9-3-27. It then imposed a more restrictive six-year statute of limitation for a breach of trust action. OCGA § 53-12-198.

[2] *Corp. of Mercer Univ. v. Nat. Gypsum Co.*, 258 Ga. 365, 366 (2) (368 SE2d 732) (1988); *Stocks v. Glover*, 220 Ga. App. 557, 559 (1) (469 SE2d 677) (1996).

[3] *Leon Jones Feed &c. v. Gen. Business Svcs.*, 175 Ga. App. 569, 570 (333 SE2d 861) (1985).

or the investment analyses or investment reviews that were furnished to you over the time this trust was in existence; isn't that correct?

A: When we started looking and investigating into it, that's where we found the information.

In an effort to circumvent her own lack of diligence, Allen argues that even if she had reviewed the trust account statements, she could not have discovered any mismanagement because CB&T was intentionally obscuring its mismanagement. Her appellate brief argues that there were 16 "active steps" taken by CB&T to mislead her and to prevent her from discovering the extent of mismanagement. We will address each purported act of CB&T to which Allen points in support of her claim that the statute of limitation was tolled.

It is important to note at the outset that under Georgia law, fraud that gives rise to a cause of action does not necessarily establish the fraud necessary to toll the statute of limitation.[4] Even when a confidential relationship between the parties exists, the fraud itself — the defendant's intention to conceal or deceive — still must be established, as must the deterrence of a plaintiff from bringing suit.[5] We address the alleged "active steps" taken by CB&T to mislead Allen and to prevent her from discovering the alleged mismanagement with this legal principle in mind.

Allen alleges she "was never shown or told of any appraisals for property sold by the trust." This allegation of fraud is unsupported by any citation to the record. Moreover, even assuming CB&T was required to give Allen appraisals of the property sold, there is no evidence in this record showing either that Allen requested such information or that CB&T intentionally withheld any such information. Allen's statement, standing alone, does not amount to the kind of fraud on the part of CB&T which would toll the statute of limitation.

Allen next claims that trust officer Alice Herin-Stag provided her with false and misleading statements concerning the trust's yields from 1973-1980. In support of this allegation, Allen cites a letter written by Herin-Stag in September 1980. Allen argues this letter showed an increase in trust yields every year from 1973 through 1980 when, in fact, the actual income of the trust shows that the yields shown in the letter are not accurate. However, Allen has failed to support this allegation by any citation to the record showing that the yields reported are not accurate other than two letters written by her expert which merely state this conclusion. In addition, even if the amounts of the yields as set forth in the letter are incorrect, there is

---

[4] *Hunter, Maclean &c. v. Frame*, 269 Ga. 844, 846 (1) (507 SE2d 411) (1998).
[5] Id. at 848.

no evidence that CB&T concealed, intentionally or otherwise, the correct yield amounts.

Furthermore, if Allen's statement that a review of the actual income of the trust shows that the yields reported in the letter were not accurate is true, then a review of the statements provided to Allen by CB&T would have shown the actual yields of the trust, and Allen could have discovered any discrepancy by reviewing the statements. Thus, even if the letter regarding the yield amounts constituted the kind of fraud which could serve to toll the running of the statute of limitation, and the record before us does not support that it did, the statute of limitation was not tolled because Allen, in the exercise of ordinary diligence, could have discovered the true yield rates.

Allen also claims that the same letter from Herin-Stag told her husband that he could not be involved in handling any of the real estate transactions in the trust. According to the letter, Allen's husband should not handle the trust's property because his close connection to the account would make the transaction instantly suspect to the Internal Revenue Service since it would be an operation at less than arm's length. Allen does not point to any evidence in the record showing that this statement was untrue or that, even if the statement was untrue, CB&T intentionally made this statement to somehow deceive Allen. Moreover, even if this statement is true, it would not serve to toll the statute of limitation by deterring Allen from filing her suit or preventing her from discovering any alleged mismanagement of the trust.

Allen claims that trust officer Buford King told her and her husband that "904 Second Avenue had five parking spaces when, in fact, the trust had sold those spaces sometime beforehand, thereby devaluing the property." Once again, Allen has cited no evidence in the record showing that the property was devalued. In addition, there is no evidence in the record before us that King's statement was made with any intent to deceive Allen or that it deterred Allen from timely filing her suit.

Allen alleges that on numerous occasions her husband addressed certain concerns to Herin-Stag, but Herin-Stag seemed to assuage his concerns. This allegation does not amount to fraud. Allen fails to show by any evidence that any statements made by Herin-Stag were false or were made with the intention to deceive her. She also points to no evidence that any such statements deterred her from timely filing her suit.

Allen alleges that she asked Herin-Stag about the reduction of principal and interest on loans made by the trust to Lamar Beck and was assured the reductions were in the best interest of the estate. Allen has failed to cite any evidence in the record showing that

Herin-Stag's statements were false or were made with the intention to deceive Allen. Moreover, she has failed to cite to any evidence in the record showing that such reductions were ever even made.

Allen claims that it took "years for the trustees to discover that the bank failed to collect rent for 54 months on [a] certain piece of [trust] property even though [CB&T] produced investment reviews and trust statements for the time in question." While it is unclear what Allen is attempting to show by this allegation, we take it to argue that CB&T committed the kind of fraud which would toll the running of the statute of limitation by failing to discover the missed rent payments. This conclusory statement does not show fraud. In fact, the record citation provided by Allen shows that CB&T is the entity which actually discovered the missed rent payments and brought them to Allen's attention. Allen has not shown how this allegation deterred her from timely filing her suit.

Allen claims that CB&T failed to reveal that various pieces of property were sold for less than their book value and without an appraisal. Once again, the only record citation given in support of this allegation is Allen's deposition, wherein she gave testimony regarding her "understanding" of the amounts for which some properties were bought and sold. She fails to cite any evidence showing the actual sales figures or showing that the sales were inappropriate or constituted fraud. If the properties were sold far below their value, and there is no such evidence in the record before us, Allen fails to point to any evidence showing that CB&T kept her from discovering this information and thus deterred her from timely filing her suit.

Allen alleges that CB&T's agents admitted they did not have strong expertise in real estate and were in the process of developing a real estate trust department. This fact does not show any fraud on the part of CB&T sufficient to toll the statute of limitation. In fact, the record citation provided by Allen shows that CB&T made such admissions several times throughout the period it acted as trustee. Such admissions may, in fact, have put Allen on notice to use ordinary diligence in determining whether the trust was being properly managed.

Allen asserts that on or about November 20, 1985, her husband asked for an independent auditor to examine the account, but CB&T refused the request. The record citation provided by Allen does not support this allegation. Moreover, even if this allegation is true, it does not constitute fraud sufficient to toll the statute of limitation period, because there is no evidence that any such action by CB&T deterred Allen from hiring an independent auditor or forensic accountant to review her trust documents and statements in 1985 or

that any such action by CB&T deterred Allen from timely filing her suit.

Allen claims that on or about November 20, 1985, her husband inquired about the relationship between former trust officer Pickard and Pickard Realty, which managed some of the property on which rents were not collected for over 54 months. This allegation does not provide any basis to conclude that CB&T intentionally deceived Allen or her husband or made any false and misleading statements so as to deter Allen from timely filing her suit.

Allen alleges that she and her husband raised questions about the propriety of the lease on 904 Second Avenue on or about September 17, 1980, but were persuaded by CB&T that the lease was proper and the property was in good shape. Once again, the record citation provided by Allen does not support this allegation. Moreover, Allen fails to point to any evidence in the record showing that CB&T's statements were false.

Allen asserts that she and her mother had a conversation with CB&T about the relationship between trust officer Pickard and Jack Pickard of Pickard Realty in April 1981 and CB&T convinced the two that no improper relationship existed. Allen fails to point to any evidence in the record showing that CB&T's comments were false or that they were made with the intention to deceive Allen or deter her from timely filing her suit.

Allen claims that on or about March 10, 1982, her husband called trust officer Herin-Stag to complain about the lease on 904 Second Avenue; to complain that the rent had not been raised on 904 Second Avenue; to complain that the trust paid for a new stove on the Fortson Road property; and to complain about the hiring of an allegedly incompetent contractor on the Lee Optical property. According to Allen, CB&T assuaged her husband's concerns. These allegations do not show any fraud. Allen fails to show that any statements made by Herin-Stag to her husband were false or made with the intention to deceive her or to prevent her from timely filing her suit.

Allen alleges that a meeting was held on September 23, 1983, to discuss the purchase of other property for the trust and after the meeting a discussion was held between the beneficiaries and Herin-Stag to discuss questions the beneficiaries had about the status of the trust. According to Allen, CB&T assuaged her concerns during this meeting. Once again, Allen has failed to cite any evidence in the record showing that CB&T made any false or intentionally misleading statements.

Allen claims that her husband asked Herin-Stag about the tax liabilities of the estate since the bank was continually selling the real estate assets of the trust, but she "convinced him everything was okay." Again, Allen has failed to cite any evidence in the record show-

ing that CB&T made any false or intentionally misleading statements which had the effect of deterring her from filing a lawsuit.

We find the record devoid of any evidence of concealment or actual fraud on the part of CB&T which deterred or debarred Allen from discovering the acts which are the basis of this action and which would have tolled the statute of limitation.[6] Fraud cannot consist of mere broken promises, expressions of opinion, unfulfilled predictions or erroneous conjecture as to future events.[7] As we pointed out in our summary of the facts, Allen not only admits that she received regular statements showing all the activities of the trust and that she did not read those statements, she acknowledged that the information contained in those very statements shows the mismanagement she alleges. A trust beneficiary cannot "put it on the back burner," "shove[ ] the statements in a drawer," sit on her rights, and then hope to bring a lawsuit clearly outside the statute of limitation period.[8] Thus, the trial court did not err in granting CB&T's motion for summary judgment.

2. Allen contends the trial court erred in striking certain opinions made by her forensic accountant in a one-page letter dated November 13, 1997. In the letter, the accountant states that a letter written by Herin-Stag at CB&T "may be fraudulent." The accountant suggests that "perhaps" Herin-Stag was trying to prevent Allen's husband from being involved in the trust "so that he would not be able to detect her lies and mismanagement." The accountant concludes the letter: "I think that this information could very well impact the statute of limitations."

The trial court held that the accountant's opinions in the letter concerning fraud should be stricken. Because the accountant's conclusions that certain acts "may" have amounted to fraud are legal conclusions for which he cannot give an expert opinion, we agree.

It is well established that an expert witness may not state a legal conclusion as to the ultimate issue.[9] In a motion for summary judgment based on the statute of limitation, the ultimate issue to be decided is whether the statute is tolled because of fraud. Thus, the accountant's opinions that Herin-Stag's September 1980 letter "may be fraudulent" are not a proper basis for expert testimony. Moreover, the accountant's conclusions regarding the possible fraud and the reasons for any possible fraud are not supported by any evidence in the record and amount to nothing more than conjecture, which is not

---

[6] See *Union Circulation Co. v. Trust Co. Bank*, 146 Ga. App. 612, 613 (2) (247 SE2d 197) (1978).

[7] *Riddle v. Driebe*, 153 Ga. App. 276, 280-281 (265 SE2d 92) (1980).

[8] See generally *Union Circulation Co.*, supra.

[9] See *McGraw v. Smith*, 232 Ga. App. 513, 515 (2) (502 SE2d 347) (1998).

a sufficient basis for an expert's opinion.[10] The trial court did not err in striking the accountant's opinions in this letter concerning fraud.

*Judgment affirmed. Miller, J., and McMurray, Senior Appellate Judge, concur. Phipps, J., disqualified.*

DECIDED MAY 31, 2000.

*David J. Grindle*, for appellant.

*Page, Scrantom, Sprouse, Tucker & Ford, W. G. Scrantom, Jr., William L. Tucker*, for appellee.

---

[10] See *City of Atlanta v. Hightower*, 177 Ga. App. 140, 143 (338 SE2d 683) (1985); *Williams v. Douglas County School Dist.*, 168 Ga. App. 368-369 (2) (309 SE2d 386) (1983).