**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

July 16, 2012

# In the Court of Appeals of Georgia

A12A0355. MAYFIELD et al. v. HEIMAN et al.

PHIPPS, Presiding Judge.

Curtis Mayfield III and Sharon Lavigne ("the beneficiaries") sued Marvin Heiman, Sussex Financial Group, Inc., an accounting firm, and others for their alleged mismanagement of a family trust created by their father, a singer-songwriter and record producer, Curtis Mayfield, Jr., who died in 1999. The beneficiaries alleged against Heiman and the other defendants a cause of action for breach of fiduciary duty and "breach of trust (and self-dealing)." Some of the defendants were dismissed from the case, but Heiman and Sussex were not. Both sides moved for summary judgment. The trial court denied summary judgment to the beneficiaries and granted summary judgment to Heiman and Sussex.

The beneficiaries appeal, contending that the trial court erred by: (1) finding that their claims accrued at the time a loan transaction was closed; (2) granting summary judgment to Heiman and Sussex because genuine issues of material fact remain as to whether the beneficiaries exercised "due care" to discover their cause of action before the statute of limitation had expired; (3) not applying law which excused them, as beneficiaries of the trust, from exercising due care to discover fraud, during the existence of the trust; (4) misinterpreting OCGA § 9-3-96; (5) transferring the case to "Business Court"; (6) opening a default judgment against the accounting firm; and (7) finding that there was no basis to impose liability for damages caused by the tax strategy rendered in this case. Finding no error, we affirm.

"On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law."[1]

Viewed in the light most favorable to the beneficiaries, the record reveals that the beneficiaries had a contingent interest in the Mayfield Family Trust ("MFT" or

---

[1] *Giles v. Swimmer*, 290 Ga. 650, 651-652 (1) (725 SE2d 220) (2012) (citation and punctuation omitted).

"Trust"). Heiman served as co-trustee of the Trust from 1999 until 2003.[2] Heiman was the president of Sussex, an entity that performed investment and management services for the Trust.

At the center of the dispute was a loan (or "securitization") transaction that Heiman entered into on May 4, 2000, on behalf of the Trust. In that transaction, the Trust (through a corporate entity, "MFT-I, LLC") received proceeds from a loan which was to be repaid from the royalty stream of, among other things, certain copyright interests which the Trust/MFT-I purchased from the beneficiaries and pledged to a lender for the loan. As part of that transaction, on March 17, 2000, the beneficiaries each signed a Renewal Term Acquisition Agreement, whereby they sold to the Trust/MFT-I, for $65,000 each, their individual rights to certain copyrighted works of Curtis Mayfield, Jr.

The acquisition agreement pertinently provided:

[E]ach of the Assignors [pertinently, Curtis Mayfield III or Sharon LaVigne] represents, warrants, and covenants, for him or herself alone, undertakes and agrees for him or herself only . . . (c) that . . . each has been represented by independent counsel selected by each in connection

_____

[2] Altheida Mayfield, the widow of Curtis Mayfield, Jr., served as co-trustee with Heiman, and at the time of the summary judgment hearing, she was the sole trustee of the Trust.

3

with the negotiation and execution of this Agreement . . . and (d) that he or she will indemnify and hold Assignee [Heiman], its successors, assigns and licensees, forever harmless. . . . In consideration of Assignee acquiring all Renewal Term Rights as in this Agreement provided, and in reliance upon the warranties and representations made by Assignors herein, Assignee will pay to each Assignor [pertinently, Curtis Mayfield III or Sharon LaVigne] (i) $65,000 within 5 days after Assignee receives its Loan proceeds from UCC Lending Corp . . . . The amount to be paid pursuant to (i) above has been computed on the basis of the following factors: (a) the number of Assignors; (b) the value of the Writer's [Curtis Mayfield, Jr.'s] share of the Renewal Term Rights based on values utilized by UCC Lending in determining the Loan amount . . . (e) the fact that this Agreement is being executed by only 80% of the Writer's widow and children, and (f) that payment is being made only for the so-called Writer's Share of royalties and not the Publisher's Share. Each Assignor acknowledges his or her understanding thereof. The right of each of the individuals comprising Assignors to receive payment as aforesaid is conditioned on his or her full compliance with all of the terms, covenants and conditions herein contained.

The acquisition agreement further provided that it "shall be rescinded if UCC Lending Corp does not fund its loan to [Heiman] prior to June 30, 2000 and all Renewal Term Rights shall revert to the Assignors [pertinently, Curtis Mayfield III and Sharon Lavigne]." The same day the beneficiaries signed the acquisition agreement, they each also signed a "Fee Agreement" document, granting Heiman a

4

power of attorney to negotiate the sale or other disposition of each beneficiary's copyright interests and agreeing, that in exchange for Heiman's services, Heiman "shall receive a fee/commission of ten percent (10%) of the gross sum obtained from the sale or other disposition" of their copyright interests.

Five days after executing the acquisition agreement, Curtis Mayfield III sent to Altheida Mayfield documentation entitled "Understanding Securitization." Curtis Mayfield III noted to Altheida Mayfield that he was sending her the information because he thought it might be of some use to her, that the document explained in detail "some of the things that happen" in a securitization transaction, and that "Marv did take the time to explain it to me but I had to get some more documentation so that I could digest it at my own pace."

The loan amount to the Trust was $5.41 million. Heiman received a commission of $541,000 from the loan transaction. The beneficiaries each received $65,000 for their copyright interests.

The beneficiaries moved for partial summary judgment on the ground of Heiman's "breach of the duty to exercise prudence in dealing with trust assets." They claimed that "Mr. Heiman caused the trust to enter into a securitization transaction although all signs indicated it would result in a loss of millions of dollars to the

5

MFT." The beneficiaries claimed that Heiman was "motivated to close the transaction by the promise of a $541,000 commission," and that the undisputed facts were sufficient as a matter of law to find that Heiman breached a duty of trust by his "failure to exercise prudence."

Heiman and Sussex moved for summary judgment, arguing, among other things, that the beneficiaries' suit was barred by the statute of limitation. The trial court agreed, finding no facts to support the beneficiaries' argument that the statute of limitation was tolled by any alleged fraudulent conduct of Heiman and Sussex. In opposition to Heiman's and Sussex's motion for summary judgment, the beneficiaries claimed that Heiman was responsible for the "disastrous tax consequences" to the Trust in connection with the loan transaction.

The trial court held that because the loan transaction closed on May 4, 2000, and the beneficiaries did not file suit until January 11, 2007, they were outside the applicable six-year statute of limitation. The court rejected the beneficiaries' argument that their claim did not begin to accrue until May 2004, when the future loan payments exceeded the loan proceeds and harm thus occurred to the Trust. The court found that the beneficiaries failed to show that the loan transaction was

6

concealed from them and that they were diligent in discovering any alleged imprudence in the transaction.

1. The beneficiaries contend that the trial court erred by finding that the statute of limitation on their claims began to run when the loan transaction was closed in 2000. They claim that the statute of limitation did not begin to run until 2004 when "appreciable harm" occurred to the Trust because it had to repay the loan with payments that exceeded net loan proceeds.

"A cause of action for breach of fiduciary duty in the management of a trust, as we have here, begins to run at the time the wrongful act accompanied by any appreciable damage occurs."[3] In *Allen v. Columbus Bank & Trust Company*,[4] a case involving alleged mismanagement of a trust and breach of fiduciary duty, we held that "it [was] clear that each time [the trustee] made an investment which the beneficiary deem[ed] to have constituted mismanagement, the trust was detrimentally affected,

---

[3] *Allen v. Columbus Bank & Trust Company*, 244 Ga. App. 271, 272 (1) (534 SE2d 917) (2000) (footnote omitted); *Hendry v. Wells*, 286 Ga. App. 774, 779-780 (1) (650 SE2d 338) (2007).

[4] Supra.

7

a cause of action accrued in favor of [the beneficiary], and the . . . statute of limitation began to run."[5]

Here, the beneficiaries claimed that Heiman and Sussex committed a breach of fiduciary duty and breach of trust when they entered into the loan transaction. Thus, the Trust was allegedly detrimentally affected when the loan transaction closed in 2000.[6] Accordingly, the trial court properly found that the statute of limitation on the beneficiaries' claims began to run at the time the loan transaction was closed in 2000.

2. The beneficiaries contend that the trial court erroneously granted summary judgment to Heiman and Sussex because genuine issues of material fact remain as to whether the beneficiaries exercised "due care" to discover before the six-year statute of limitations had expired that the loan transaction was imprudent.

Former OCGA § 53-12-198 (a),[7] in effect at all times relevant to this case, provided that a cause of action for a beneficiary's claim for breach of trust against a

---

[5] Id.

[6] See id.

[7] Pursuant to OCGA § 53-12-198 (a), which has been repealed, the applicable statute of limitation for a beneficiary's claim for breach of trust against a trustee is six years. OCGA § 53-12-307, enacted by Ga. L. 2010, p. 579, § 1, is the current similar statutory provision.

trustee must be commenced within six years after receipt of a written report that adequately disclosed the existence of a claim against a trustee for breach of trust. The statute further provided that if

> the beneficiary has not received a report which adequately discloses the existence of a claim against the trustee for breach of trust, the claim is barred as to that beneficiary unless a proceeding to assert the claim is commenced within six years after the beneficiary discovered, or reasonably should have discovered, the subject of the claim."

Similarly, OCGA § 9-3-96 provides: "If the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud."

The beneficiaries argue that whether a plaintiff exercises diligence is a jury question. But under Georgia law,

> "[t]hough the level of diligence required by the plaintiff in investigating the fraud is lessened where a confidential relationship exists, it is not entirely extinguished [and] . . . . although issues concerning a plaintiff's diligence in discovering fraud usually must be resolved by the trier of

9

fact, this is not always the case. A party may fail to exercise due diligence as a matter of law."[8]

"Where a fiduciary fails to disclose a material fact there is actionable fraud. . . . . Under Georgia law, fraud that gives rise to a cause of action does not necessarily establish the fraud necessary to toll the statute of limitation."[9]

> Fraud sufficient to toll the statute of limitation requires: (1) actual fraud involving moral turpitude on the part of the defendant; (2) the fraud must conceal the cause of action from the plaintiff, thereby debarring or deterring the knowing of the cause of action; and (3) the plaintiff must have exercised reasonable diligence to discover the cause of action, notwithstanding the failure to discover within the statute of limitation.[10]

"To constitute concealment of a cause of action so as to prevent the running of limitations, some trick or artifice must be employed to prevent inquiry or elude investigation, or to mislead and hinder the party who has the cause of action from

---

[8] *Cochran Mill Assoc. v. Stephens*, 286 Ga. App. 241, 247 (2) (648 SE2d 764) (2007) (punctuation and footnotes omitted); *Hunter, Maclean, &c. v. Frame*, 269 Ga. 844, 849 (1) (507 SE2d 411) (1998).

[9] *Hendry*, supra (citations and punctuation omitted); see OCGA § 23-2-53 (suppression of material fact as fraud).

[10] *Kane v. Shoup*, 260 Ga. App. 723, 726 (2) (580 SE2d 555) (2003) (citation omitted); See OCGA § 9-3-96 (tolling of limitations for fraud of defendant).

10

obtaining information, and the acts relied on must be of an affirmative character and fraudulent."[11]

> In *Goldston [v. Bank of America Corp.]*,[12] we reversed the trial court's decision to dismiss a trust beneficiary's complaint as time-barred, finding that the statute of limitation was tolled by the fraud engaged in by the trustee/bank when it failed to disclose the very existence of the trust and failed to comply with any of its provisions. In *Goldston*, we specifically distinguished *Allen*,[13] noting that the beneficiary in that case was well aware of the trust's existence; had received benefits therefrom; and regularly received account statements which she admitted to never reading.[14]

The beneficiaries argue that Heiman did not disclose important information, such as his opinion that the "value of the assets might decline," or what "amount of money the Trust would repay over the life of the loan."

The record shows that the beneficiaries *knew* about the loan transaction when the loan closed in May 2000. Indeed, just two months before the loan closed, the

---

[11] *Wilson v. Tara Ford*, 200 Ga. App. 98, 100 (2) (406 SE2d 807) (1991) (citation and punctuation omitted); see OCGA § 23-2-53.

[12] 259 Ga. App. 690 (577 SE2d 864) (2003).

[13] Supra.

[14] *Cochran Mill Assoc.*, supra at 246 (1).

beneficiaries signed documents which stated that the express purpose of their execution was to sell their individual interests in Curtis Mayfield, Jr.'s copyrights to effectuate the loan transaction. The documents which they signed expressly stated that the value they would receive for their copyright interests was based on values utilized by "UCC Lending"; and that they acknowledged their understanding thereof.

Once the beneficiaries were paid the amount agreed upon in the acquisition agreement, they knew, pursuant to that same agreement, that the loan had been funded and that they had lost their interests in the copyrights. Furthermore, as it concerned Curtis Mayfield III, the note (with attached information about securitization transactions) which he sent to Altheida Mayfield just days after executing the acquisition agreement shows that he had discussed the loan transaction with Heiman.

The beneficiaries point to no evidence, however, showing that Heiman intentionally withheld from them information such as his opinion that the value of the assets might decline, or what amount of money the Trust would repay over the life of the loan transaction, and that they were thereby deterred from filing suit. They point to no evidence that they had asked Heiman for his opinion on whether the value of the assets would decline or what amount of money the Trust would repay over the life of the loan. They point to no evidence that Heiman did anything to deter them from

12

hiring an attorney or other professional advisor to review the acquisition agreement documents before they signed them or that Heiman took any action to deter them from timely filing their suit.[15] The beneficiaries had information (particularly, the acquisition agreements) in their possession about which they could have sought advice.[16]

On motion for summary judgment based upon the running of the statute of limitation, "the movant has only the burden of proof as to an affirmative defense of the running of the statute of limitation and not to establish the absence of facts showing a tolling."[17] The burden of persuasion that the statute of limitation has not attached then "falls to the plaintiff to present some evidence showing that an issue exists that the statute has not run but has been tolled."[18]

---

[15] See *Allen*, supra at 272-277 (1).

[16] See *Hendry*, supra at 780 (1) ("the statute of limitation would not be tolled where the plaintiff had information in her possession from which she could have discovered the truth").

[17] *Miller v. Kitchens*, 251 Ga. App. 225, 227 (a) (553 SE2d 300) (2001) (citation omitted).

[18] Id. (citations omitted).

The record showed that the beneficiaries failed to meet their burden by presenting some evidence to raise an issue of material fact that they exercised diligence to discover fraud which would have tolled the running of the statute of limitation. Accordingly, the trial court properly decided the issue as a matter of law.

3. The beneficiaries contend that the trial court erred by failing to apply law which excused them, as beneficiaries of the trust, from exercising due care to discover fraud during the existence of the trust. This issue is controlled adversely to the beneficiaries based on the law we set forth in Division 2,[19] and we need not address it again here.

4. The beneficiaries contend that the trial court misinterpreted OCGA § 9-3-96;[20] that the trial court erroneously relied on *Allen*;[21] and that the statute of limitation was tolled during the time Heiman was trustee by virtue of his being in a confidential relationship with them.

---

[19] Supra.

[20] Supra.

[21] Supra.

(a) In reaching our conclusion in Division 2,[22] we considered the provisions of OCGA § 9-3-96 and we held that the trial court did not err in finding that the beneficiaries failed to exercise diligence, which they were required to use, in discovering fraud before the statute of limitation expired.

(b) The beneficiaries contend that the statute of limitation was tolled during the time Heiman was trustee by virtue of his being in a confidential relationship with them. They argue that *Allen* supports their contention because in that case the beneficiary filed suit for breach of fiduciary duty ten years and two months *after* the trust had terminated.[23] But in *Allen*, we included the fact of the beneficiary filing suit at that time only to address her meritless argument that the statute of limitation had not begun to run until the trust corpus was disbursed approximately one year after the trust had terminated and that thus, her suit was timely filed.[24]

As we have already stated, our holding in *Allen* was that "[a] cause of action for breach of fiduciary duty in the management of a trust . . . begins to run at the time

---

[22] Supra.

[23] *Allen*, supra at 271.

[24] Id. at 271-272 (1).

the wrongful act accompanied by any appreciable damage occurs."[25] And in applying that principle to that case, we held further that it was clear that each time the trustee made an investment which the beneficiary deemed constituted mismanagement, "the trust was detrimentally affected, a cause of action accrued in favor of [the beneficiary], and the . . . statute of limitation began to run."[26] We thus looked to each of the beneficiary's specific claims of acts of mismanagement to determine when her causes of action accrued.[27]

The beneficiaries misconstrue *Allen*. Indeed, "[a] confidential relationship cannot, standing alone, toll the running of the statute."[28] We see no merit in the beneficiaries' contentions.

5. The beneficiaries contend that the trial court erred by transferring the case to "Business Court." They assert that the Order of the Supreme Court of Georgia allowing such transfers excludes cases that "have a personal injury component unless all parties consent," and they did not consent to the transfer because they alleged a

---

[25] Id. at 272 (1) (footnote omitted).

[26] Id. at 272 (1).

[27] Id.

[28] *Hunter, Maclean, &c.*, supra at 847 (1).

personal injury claim for intentional infliction of emotional distress in their complaint.[29]

The tort of intentional infliction of emotional distress requires proof of four elements:

> (1) intentional or reckless conduct; (2) which is extreme and outrageous; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress. To warrant recovery, the conduct also must be of such serious import as to naturally give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress. Otherwise, the conduct will not rise to the requisite level of outrageousness and egregiousness.[30]

In support of their assertion that they alleged a claim for the intentional infliction of emotional distress which is a personal injury claim, they point to certain pages of their complaint to show that they alleged a claim for intentional infliction of emotional distress. But we are not persuaded that the pages cited allege facts or law to state a claim for intentional infliction of emotional distress.

---

[29] The Supreme Court Order which the beneficiaries reference provides for the transfer of cases from the Superior Court of Fulton County to the "Fulton County Superior Court Business Case Division," not to "Business Court."

[30] *Nicholson v. Windham*, 257 Ga. App. 429, 433 (3) (571 SE2d 466) (2002) (punctuation and footnotes omitted).

The beneficiaries did not allege in any count of the complaint a claim for intentional infliction of emotional distress. Moreover, none of the pages to which they point contain allegations that Heiman's and Sussex's conduct was extreme and outrageous, that it caused severe emotional distress, and that there was a causal connection between alleged wrongful conduct and emotional distress. Further, the beneficiaries have pointed to no allegations which show that any conduct was of such serious import to naturally give rise to intense feelings of humiliation, embarrassment, outrageousness and egregiousness.[31]

Accordingly, there was no error in the trial court's transfer of the case to the Business Case Division of the Fulton County Superior Court.

6. The beneficiaries contend that the trial court erred by opening a default judgment that had been entered against the accounting firm Heiman hired.

> Under OCGA § 9-11-55 (b), a prejudgment default may be opened on one of three grounds if four conditions are met. The three grounds are: (1) providential cause, (2) excusable neglect, and (3) proper case; the four conditions are: (1) showing made under oath, (2) offer to plead instanter, (3) announcement of ready to proceed with trial, and (4) setting up a meritorious defense.

---

[31] Compare id.

18

Generally, the opening of a default rests within the sound discretion of the trial court. Compliance with the four conditions, including the necessity of setting up a meritorious defense, however, is a condition precedent; absent the showing of a meritorious defense, a trial court has no discretion to open a default. Furthermore, the failure to make this showing is, in and of itself, fatal to the motion to open default, such that no other condition need be considered. In order to establish a meritorious defense, a defendant must demonstrate that the outcome of the case "may be different" if the motion is granted. But, in making that showing, a defendant cannot rely on mere conclusions; he must set forth facts that establish the essential elements of a meritorious defense.[32]

At a hearing, the beneficiaries asserted that of the four required conditions, they took issue with only the fourth one, that the accounting firm had failed to set forth facts that established the essential elements of a meritorious defense. But the record belies this assertion.

Here, the accounting firm filed a motion to open default and a brief in support thereof; the firm attached to the motion the affidavit of a representative from its office, explaining its delay in timely answering the complaint. The affidavit also set forth defenses and supporting facts, including the fact that it was an "accounting firm

---

[32] *Butterworth v. Safelite Glass Corp.*, 287 Ga. App. 848, 849-850 (1) (652 SE2d 877) (2007) (punctuation, emphasis, and footnotes omitted).

19

(professional corporation)" with an office and place of business out-of-state, that the beneficiaries had named it as a defendant, and that all claims alleging professional malpractice against the firm were barred because of the beneficiaries' failure to comply with the statutory filing requirements. The affidavit referenced an answer the firm had simultaneously filed with the motion to open default. Indeed, the firm pled instanter, and included an announcement that it was ready for trial.

The accounting firm met its burden of setting forth facts to establish a meritorious defense, and the trial court did not abuse its discretion in opening the default judgment in this regard.[33]

7. The beneficiaries contend that the trial court erred in finding that there was no basis to impose liability for damages caused by the tax strategy rendered by the accounting firm that Heiman hired for the Trust. They argue that while Heiman claims he relied on a law firm for advice regarding the proper "depreciation mechanism" to use to file taxes for the Trust, the record shows that "the decision rested solely with Heiman." The beneficiaries assert that a jury question remains as to whether Heiman acted prudently in connection with employing a "risky and untested tax strategy."

---

[33] See *Johnson v. American Nat. Red Cross*, 253 Ga. App. 587, 589-590 (1) (569 SE2d 242) (2002); *Pinehurst Baptist Church v. Murray*, 215 Ga. App. 259, 261-262 (1) (450 SE2d 307) (1994).

20

The beneficiaries misconstrue the trial court's ruling. The trial court ruled:

> [The beneficiaries] claim that the damage to the Trust due to the unfavorable tax consequences of the securitization transaction naturally flows from Heiman's purported breach of trust in connection with the transaction. Because the Court finds that any underlying claims arising out of the securitization transaction are time-barred, [the beneficiaries] are precluded from reovering any alleged tax damages.

The court ruled further that to the extent that the beneficiaries argued that Heiman committed a further breach of trust "for the tax position taken by the Trust in connection with the transaction, the Court is not persuaded." The court found that the record showed that Heiman relied on professionals to render tax advice and to prepare the Trust's tax returns, and thus, there was no basis on which to impose liability on Heiman.

Indeed, in the lower court the beneficiaries took the position that damages regarding the tax consequences "naturally flowed from the fact that the securitization transaction was entered," and that "[b]ecause the underlying transaction constituted breach, the tax damages were a foreseeable consequence of the transaction itself and

are recoverable on that basis."[34] Because the beneficiaries clearly took the position that any tax damages were a consequence of the "breach" on the loan transaction, and because we concluded in Division 2[35] that their claims for breach in connection with that transaction were time-barred, any tax damages relating to the "foreseeable consequence of the transaction itself" are also barred.[36] Accordingly, the trial court did not err in that regard.

*Judgment affirmed. Ellington, C. J., and Dillard, J., concur.*

---

[34] See *Hendry*, supra at 781-782 (2) (noting that "a party to an action is bound by material allegations made in his pleadings so long as they remain in his pleadings") (citations and punctuation omitted).

[35] Supra.

[36] See generally *Ludwig v. Ludwig*, 281 Ga. 724, 725 (1) (642 SE2d 638) (2007) (beneficiaries' "claims relating to events" pre-dating a particular date were barred because they were not brought within applicable statute of limitation).