**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY, and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 8, 2015**

# In the Court of Appeals of Georgia

A15A0202. WELLS FARGO BANK, N.A. v. COOK et al.

A15A0203. COOK et al. v. WELLS FARGO BANK, N.A.

BARNES, Presiding Judge.

These companion appeals center on the administration of a charitable remainder annuity trust ("CRAT") that was formed in 2000. The trustee of the CRAT was Wells Fargo Bank, N.A.,[1] and the beneficiaries were Gail L. Cook and Lance A. Lipman (collectively, the "plaintiffs"). In 2011, after the corpus of the trust was exhausted, the plaintiffs sued the bank for breach of fiduciary duty and breach of contract. Following discovery, the plaintiffs moved for partial summary on their breach of contract claim, and the bank moved for summary judgment on both of the plaintiffs' claims. The trial court denied both summary judgment motions but granted a certificate of immediate review. Following the grant of their applications for

---

[1] Wells Fargo is the successor in interest to Wachovia, the original trustee. For ease of reference, we refer simply to "Wells Fargo" or the "bank" throughout this opinion.

interlocutory appeal, the bank and the plaintiffs now challenge the trial court's summary judgment rulings.

For the reasons discussed below, we conclude that the plaintiffs' claims for breach of fiduciary duty that accrued more than two years before the filing of their lawsuit are barred by the two-year statute of limitation imposed by the Revised Georgia Trust Code of 2010, OCGA § 53-12-307 (a). We conclude that plaintiffs' remaining claims for breach of fiduciary duty fail as a matter of law because the plaintiffs did not come forward with evidence to support all of the essential elements of those claims. Lastly, we conclude that the plaintiffs claim for breach of contract is precluded by the plain language of the parties's trust agreement. Consequently, we reverse the trial court's denial of summary judgment to Wells Fargo in Case No. A15A0202, and we affirm the trial court's denial of partial summary judgment to the plaintiffs in Case No. A15A0203.

Summary judgment is proper if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). On appeal from the trial court's denial of summary judgment, our review is de novo, and we construe the evidence in

2

the light most favorable to the nonmoving party. *Tucker Fed. S & L Assn.v. Balogh*, 228 Ga. App. 482 (491 SE2d 915) (1997).

So viewed, the record reflects that the plaintiffs are married. Plaintiff Cook has her Masters of Business Administration, is a former certified financial planner, and previously owned a financial services company. Plaintiff Lipman owns his own video production company. From 1972 to 1999, the plaintiffs obtained, through a series of gifts from Cook's uncle, shares of stock in Analog Devices, Inc., a publicly traded digital and communications technology company.

By 2000, the shares of Analog stock owned by the plaintiffs had a market value of over $1,900,000. At that time, Plaintiff Cook was 47 years old and Plaintiff Lipman was 50 years old. Because the plaintiffs were small business owners with no corporate retirement plan, they decided to use 12,000 shares of the Analog stock to fund their future retirement. However, the plaintiffs had no tax basis in the stock, and they faced considerable capital gains taxes if the stock were sold outright because it had appreciated greatly over the years.

In early 2000, after consulting with their estate-planning attorney, the plaintiffs decided that the formation of a CRAT, with the plaintiffs designated as the lifetime beneficiaries of the trust, likely would best serve their retirement goals while also

providing tax benefits. By using a CRAT, the plaintiffs could reduce their taxable income by receiving a charitable tax deduction (valued at the time the trust was created) and by deferring capital gains taxes. 26 U.S.C. § 664 (b), (c); 26 C.F.R. § 1.664-2 (d).

The Internal Revenue Code and related Internal Revenue Service ("IRS") rules and regulations govern whether a trust qualifies as a CRAT under federal tax law. See 26 U.S.C. § 664 (d) (1); 26 C.F.R. § 1.664-2. Under a CRAT, donors can transfer assets into a trust and then provide for, among other options, an annual distribution to one or more beneficiaries for their lifetime, with the remainder of the trust paid to a qualified charity upon the beneficiaries' death. 26 U.S.C. § 664 (d) (1). The annuity amount paid to beneficiaries must be in a predetermined fixed sum (calculated on the date that the CRAT is funded), and it must be no less than 5 percent and no greater than 50 percent of the initial fair market value of the trust. 26 U.S.C. § 664 (d) (1) (A).

After consulting with their estate planning attorney, the plaintiffs met with their personal banker at Wells Fargo, who referred them to the bank's trust department. The plaintiffs, their estate-planning attorney, and bank officials from the trust department then met and discussed the feasibility of a CRAT as a retirement vehicle

for the plaintiffs. The parties agreed that the 12,000 shares of Analog stock would be transferred into the trust, after which the stock would be sold at some point and the proceeds used to diversify the trust's investment portfolio. The plaintiffs reiterated that they wished to receive a fixed annual distribution as beneficiaries of the trust that would last for their lifetimes without depleting the corpus of the trust.

The parties agreed that the plaintiff's estate-planning attorney would draft a trust agreement, and Wells Fargo would supply calculations suggesting the percentage rate for the annual distributions that would be paid to the plaintiffs as the lifetime beneficiaries. Subsequently, Wells Fargo provided the requested calculations and suggested an annual fixed distribution to the plaintiffs of 7.5 percent of the initial fair market value of the trust. The plaintiffs agreed to the annual distribution percentage recommended by Wells Fargo, and the trust agreement was drafted accordingly.

On February 18, 2000, the plaintiffs executed the trust agreement under which Wells Fargo was appointed as trustee of the CRAT into which the 12,000 shares of Analog stock would be transferred (the "Trust" or "Trust Agreement"). Item 2 (A) of the Trust Agreement provided in relevant part:

The Trustee shall invest and reinvest the trust property and in each taxable year of this trust shall pay, in equal quarterly installments, equally to [the plaintiffs], during their lifetimes, and after the death of the first to die of the two of them, to the survivor of them, for such time as such survivor lives, the "annuity amount" equal to seven and one-half percent (7.5%) of the initial net fair market value of the property passing into this trust as finally determined for federal gift tax purposes. The annuity amount shall be paid from income and, to the extent income is not sufficient, from principal. . . .

The Trust Agreement further provided that upon the death of the surviving plaintiff, the bank would pay "all of the then principal and income of this trust" to certain designated charitable beneficiaries.

On February 25, 2000, the plaintiffs transferred the 12,000 shares of Analog stock into the Trust. On the day of the transfer, the 12,000 shares of stock were valued at $1,904,250. Based upon the stock's fair market value of $1,904,250 at the time of the transfer, the 7.5 percent annual distribution to the plaintiffs was fixed at $142,818.

On February 28, 2000, Wells Fargo sold all of the Analog stock and used the proceeds to diversify the Trust's investment portfolio. By that date, the value of the stock had decreased to $1,678,984, a decline of $225,266 from the day of the transfer.

6

Wells Fargo invested and reinvested the proceeds from the sale of stock in various investment funds over the next several years and paid the required 7.5 percent annual distributions of $142,818 to the plaintiffs. However, the annual returns on the investments in the Trust did not exceed the 7.5 percent annual distribution amount, and the corpus of the Trust declined in value every year. From March 2000 through September 2011, Wells Fargo sent the plaintiffs statements on a quarterly and yearly (and sometimes monthly) basis that reflected the overall declining value of the Trust.

In May 2002, Plaintiff Cook expressed her concern about the declining value of the Trust to a Wells Fargo investment manager. Because of their continued concerns over the management of the Trust, the plaintiffs subsequently retained an attorney to represent them in the matter. In November 2003, the plaintiff's attorney sent a letter to the Wells Fargo senior vice president of charitable services expressing concern as to whether the Trust would be able to pay the plaintiffs $142,818 per year for their lives and still have a remainder to distribute to the designated charitable beneficiaries. The attorney also asserted that Wells Fargo had assumed the obligation of ensuring that there was a sufficient income stream from the Trust to make the required annual distributions to the plaintiffs for life. In December 2003, the vice president wrote back to the plaintiffs and their attorney, assuring them that the bank

would continue to prudently exercise its fiduciary duties in managing the trust, but denying that the bank had ever promised to guarantee an annual distribution to the plaintiffs for their lives even if the corpus of the Trust was exhausted.

The plaintiffs and their attorney met with the Wells Fargo senior vice president in June 2004 to discuss the depletion of the Trust and their concern over its management. In July 2004, the senior vice president again wrote to the plaintiffs reiterating the bank's position that it had not guaranteed an annual distribution to the plaintiffs for life irrespective of whether the Trust corpus was depleted, and suggesting that any decline in the Trust was the result of the fixed annual distributions and unfavorable market conditions affecting the return on the Trust's investments.

By September 2011, the corpus of the Trust was completely depleted. Wells Fargo made a final distribution that year to the plaintiffs of $75,744, and then closed the Trust account. From February 2000 through September 2011, the plaintiffs received $1,625,288 in annual distributions from the Trust. The plaintiffs deferred $335,796 in federal capital gains taxes and received a charitable deduction of $203,012 in tax years 2000 and 2001.

On April 16, 2012, the plaintiffs sued Wells Fargo for damages, alleging that the bank in its capacity as trustee had violated its fiduciary duties of prudent administration and loyalty by failing to adhere to the investment objectives of the plaintiffs and mismanaging the assets of the Trust, causing the corpus to be exhausted after 11 years. The plaintiffs also claimed that Wells Fargo had breached a contractual promise to provide them with an annual distribution of $142,818 for the rest of their lives.

Wells Fargo answered, denying liability. Following discovery, the plaintiffs moved for partial summary judgment on their claim for breach of the Trust Agreement, asserting that the uncontroverted evidence showed that the bank had a contractual obligation to pay them $142,818 annually for their lifetimes, even if the Trust corpus was exhausted. Wells Fargo then moved for summary judgment on all of the plaintiffs' claims, contending that they were barred by the applicable statute of limitation and/or that the plaintiffs could not prove all of the necessary elements to recover under either a breach of fiduciary duty theory or breach of contract theory.

After conducting a hearing where the parties presented oral argument, the trial court denied both motions for summary judgment. The trial court issued a certificate

9

of immediate review, and both parties filed applications for interlocutory appeal. We granted the applications, and these companion appeals followed.

*Case No. A15A0202*

1. Wells Fargo contends that the trial court erred in denying its motion for summary judgment on the plaintiffs' claims for breach of fiduciary duty because (a) any claims relating to the failure to follow the plaintiffs' investment objectives and mismanagement of the Trust that accrued before April 2010 are barred by the applicable statute of limitation and (b) any remaining claims that accrued after 2010 fail as a matter of law because the plaintiffs have not come forward with evidence sufficient to prove all of the essential elements of a breach of fiduciary duty claim. We agree with Wells Fargo.

(a) *Claims Relating to the Management of the Trust before April 2010.* The plaintiffs' claims relating to the alleged failure to follow their investment objectives and mismanagement of the Trust that accrued before April 2010 are barred as a matter of law by the applicable statute of limitation. Wells Fargo had the burden of proving that the limitation period had run on these claims, see *Smith v. Suntrust Bank*, 325 Ga. App. 531, 539 (1) (754 SE2d 117) (2014), and it met that burden as a matter of law.

10

The parties do not dispute that the plaintiffs' breach of fiduciary duty claims are governed by the limitation period set forth in the Revised Georgia Trust Code of 2010, OCGA § 53-12-307 (a). See *Smith*, 325 Ga. App. at 537-538 (1), n.8. OCGA § 53-12-307 (a) provides two different limitation periods for actions brought by beneficiaries against trustees – six years and two years. See *Hasty v. Castleberry*, 293 Ga. 727, 730 (2) (749 SE2d 676) (2013); *Smith*, 325 Ga. App. at 537-538 (1).[2] The limitation period is reduced from six to two years for claims where "a beneficiary has received a written report that adequately discloses the existence of a claim against the trustee for a breach of trust." OCGA § 53-12-307 (a). A written report provides adequate disclosure of a claim "if it provides sufficient information so that the beneficiary knows of such claim or reasonably should have inquired into the existence of such claim." Id. If such a written report has been received by the beneficiary, a claim for breach of trust is "barred as to that beneficiary unless a proceeding to assert the claim is commenced within two years after receipt of the report." Id.

"Report" is not defined in OCGA § 53-12-307 (a). But

---

[2] The statute of limitation may be tolled by a defendant's fraudulent conduct, *Smith*, 325 Ga. App. at 538 (1), but the plaintiffs conceded at the summary judgment hearing that they were not claiming that the limitation period had been tolled.

[o]ur Supreme Court recently held that a "report" under this statutory provision should be construed to mean a report from a trustee to a beneficiary containing "detailed information" that includes "the assets, liabilities, receipts, and disbursements of the trust, the acts of the trustee, and the particulars relating to the administration of the trust, including the trust provisions that describe or affect such beneficiary's interest."

*Smith*, 325 Ga. App. at 541 (1) (quoting from *Hasty*, 293 Ga. at 731-732 (2)). See OCGA § 53-12-243 (a).

Here, the uncontroverted evidence shows that Wells Fargo sent detailed trust statements to the plaintiffs on a quarterly, yearly, and sometimes monthly basis beginning on March 21, 2000, and continuing through September 30, 2011, when the Trust was exhausted. The plaintiffs admitted to receiving the statements from Wells Fargo. Among other things, the Trust statements identified the Trust, the trustee, the time period covered by each statement, a breakdown of the investment funds in which the Trust was invested, and a description of every transaction and disbursement made by the trustee during the time period designated in each statement. The statements included an account summary for the designated time period and information regarding the gains and losses on investments made by the Trust, income and dividend receipts, current yields of the investment funds, and beginning and ending

12

balances. These statements consistently showed the value of the Trust declining over time.

The Trust statements contained sufficiently detailed information to inform the plaintiffs of potential claims based on the alleged failure to follow their investment objectives and mismanagement of the Trust, as the plaintiffs own conduct over the years reflects. The plaintiffs informed bank officials of their concerns over the management of the Trust as early as 2002, and they retained an attorney in 2003 who sent a letter to the Wells Fargo senior vice president of charitable services indicating their continued concerns regarding the management of the Trust. The plaintiffs met with the senior vice president in 2004 to reiterate their concerns over depletion of the Trust and its management.

Under these circumstances, we conclude that the regular periodic Trust statements received by the plaintiffs met the requirements of a "report" under OCGA § 53-12-307 (a), and upon receipt of each statement the two-year statute of limitations began to run on any claims that had accrued by that point.[3] See *Hamburger v. PFM*

_____

[3] The plaintiffs argue that the Trust statements do not constitute "reports" because they do not reference any specific provision of the Trust. We are unpersuaded. In *Hasty*, 293 Ga. at 732 (2), our Supreme Court held that the "report" should contain the "type of detailed information contemplated by the Legislature" in OCGA § 53-12-243 (a), not that the reports under OCGA § 53-12-307 must include every item listed to qualify for the two-

13

*Capital Mgmt.*, 286 Ga. App. 382, 388-389 (4) (649 SE2d 779) (2007) (plaintiff's claims based on alleged mismanagement of retirement savings account barred by statute of limitation where the plaintiff received quarterly account statements that disclosed the allocation of stock holdings in the account and the losses sustained as a result of those holdings). Compare *Hasty*, 293 Ga. at 732 (2) (letter to plaintiff from his accountants that failed to contain detailed information and "was simply a form of general correspondence" did not constitute a "report" under OCGA § 53-12-307 (a)). Accordingly, all of the plaintiffs' breach of fiduciary duty claims predicated on the alleged failure to follow their investment objectives and mismanagement of the Trust are barred as a matter of law, except for claims that accrued in the two years before the plaintiffs filed suit (April 2010 to April 2012).

The plaintiffs argue, however, that none of their breach of fiduciary duty claims accrued until September 2011, when Wells Fargo first failed to pay them their full annual distribution of $142,818, because that was when they were first damaged by the bank's management of the Trust. We disagree.

---

year statute of limitations. See *Smith*, 325 Ga. App. at 541 (1). The Trust statements, as previously discussed, provided sufficiently detailed information to put the plaintiffs on actual or constructive notice of any claims.

14

Georgia courts have rejected application of a continuing tort theory to claims for breach of trust. See *Allen v. Columbus Bank & Trust Co.*, 244 Ga. App. 271, 272 (1) (534 SE2d 917) (2000). Rather, "[e]ach act of alleged mismanagement by a trustee that detrimentally affects a beneficiary creates a new cause of action for that specific act of mismanagement" on which the statute of limitation begins to run. *Smith*, 325 Ga. App. at 545 (2) (b). See *Mayfield v. Heiman*, 317 Ga. App. 322, 325 (1) (730 SE2d 685) (2012); *Allen*, 244 Ga. App. at 272 (1).

Furthermore, the limitation period begins to run when the plaintiff first experiences any appreciable harm, even though the harm might be slight and most of the harm occurs at some later point. Cf. *Stocks v. Glover*, 220 Ga. App. 557, 558 (1) (469 SE2d 677) (1996) (breach of fiduciary duty claim against attorney "begins as soon as there is a breach of the attorney's duty and some degree of harm, however, even if the degree of harm is minimal and much or most of the harm occurs later"); *Leon Jones Feed & Grain v. Gen. Business Svcs.*, 175 Ga. App. 569, 570 (333 SE2d 861) (1985) (noting that cause of action accrues "where even slight or nominal damage occurs as a result of the wrongful act" in the context of a claim for negligent performance of financial and tax advice services). Based on this principle, we have held that each time a trustee makes an investment which the beneficiary alleges to

15

have constituted mismanagement, the trust is detrimentally affected, and a cause of action accrues in favor of the beneficiary at that point and the limitation period begins to run on that specific claim. See *Mayfield*, 317 Ga. App. at 325 (1); *Allen*, 244 Ga. App. at 272 (1).

When these principles are applied to the present case, it is clear that any claim for breach of fiduciary duty by the plaintiffs based on Wells Fargo's decision to sell all of the Analog stock on February 28, 2000, after the value of the stock had declined $225,266 from the day of the transfer, accrued on the date of the stock sale. See *Mayfield*, 317 Ga. App. at 325 (1); *Allen*, 244 Ga. App. 272 (1). Likewise, any breach of fiduciary duty claim based on Wells Fargo's alleged failure to comply with the plaintiffs' investment objectives and mismanagement of the Trust's investment portfolio accrued on the date the specific investment was made with which the plaintiffs take issue. See id. Consequently, in light of the applicable two-year limitation period, all of the plaintiffs' breach of fiduciary duty claims are barred, except for those based on specific investment decisions made by Wells Fargo within two years of when the lawsuit was filed (April 2010 to April 2012). The trial court therefore erred in failing to grant Wells Fargo's motion for summary judgment on those claims that accrued before April 2010.

16

(b) *Claims Relating to the Management of the Trust after April 2010.* The plaintiffs' remaining breach of fiduciary claims that accrued after April 2010 also fail as a matter of law, but for a different reason. It is well-established that a defendant can succeed on summary judgment

> by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of [the] plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of [the] plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial.

*Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). That is the situation in the instant case.

"Establishing a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." (Punctuation and footnote omitted.) *SunTrust Bank v. Merritt*, 272 Ga. App. 485, 489 (2) (612 SE2d 818) (2005). A trustee is not a guarantor of the value of a trust and thus can be held liable for the depreciation in value of trust assets only if the plaintiff shows that the loss in value

was caused, at least in part, by a breach of fiduciary duty. See *C & S Nat. Bank v. Haskins*, 254 Ga. 131, 134 (1) (327 SE2d 192) (1985).

Here, it is undisputed that the corpus of the Trust continued to decline in value from April 2010 until it was completely depleted in September 2011, but that, standing alone, is insufficient to prove a breach of fiduciary duty by Wells Fargo. Notably, the plaintiffs did not present any expert testimony regarding the investment decisions or management of the Trust by Wells Fargo and otherwise have failed to cite to any evidence reflecting what the bank should have done differently to administer the Trust investments from April 2010 to September 2011 to avoid the losses to, and ultimate exhaustion of, the corpus.[4] Nor have the plaintiffs cited to any

---

[4] In their appellee brief, the plaintiffs assert that "[a]ll [the bank's investment manager assigned to the Trust during the relevant time period] did was to sell off enough of the mutual fund investments each quarter to pay [the plaintiffs] their annuity distribution." The plaintiffs cite to one page of the investment manager's deposition testimony to support their assertion, but the manager simply testified on that page that when distributions were due the plaintiffs, he would sell some of the assets in the Trust to raise cash; he did not testify that *all* he did in managing the Trust was to sell assets to fund the distributions. Elsewhere in his deposition, the investment manager testified that he had the responsibility for determining which assets were held in the trusts assigned to him, including the Trust at issue here, and would decide which equity funds to buy or sell as part of the allocation of securities for those trusts. According to the investment manager, in making these allocation decisions, he would look to a list of recommended mutual funds developed by the bank, and he would use a software program created by the bank that recommended what types of investments should be included in a particular type of trust. The plaintiffs presented no evidence that any of the decisions by the investment manager

18

evidence reflecting that the depletion of the Trust assets was proximately caused by any breaches of trust during the relevant time period rather than solely as the result of the required annual distributions to the plaintiffs of 7.5 percent or market conditions. Furthermore, the plaintiffs themselves cite to testimony of a Wells Fargo trust advisor reflecting that it was foreseeable by 2008 that the corpus of the Trust ultimately would be exhausted, but they nevertheless failed to present any evidence that the losses in the Trust could have been reversed or exhaustion prevented by the time period relevant here (April 2010 to September 2011). Based on this record, there has simply been a failure of proof by the plaintiffs on their breach of fiduciary duty claims relating to the administration of the Trust from April 2010 onward, and the trial court erred in failing to grant Wells Fargo's motion for summary judgment on these claims.

2. Wells Fargo contends that the trial court erred in denying its motion for summary judgment on the plaintiffs' claim for breach of contract. The plaintiffs claimed that the bank was contractually obligated to pay them an annual distribution of $142,818 for the remainder of their lives, irrespective of whether the Trust corpus

---

to buy or sell particular investments in the Trust during the relevant time period constituted a breach of fiduciary duty.

19

was exhausted. According to Wells Fargo, the plain language of the Trust Agreement belies the plaintiffs contract claim.[5] We agree with Wells Fargo.

"In construing an express trust, we look first and foremost to the language therein and interpret that language to effectuate the intent of the settlors. We turn to parol evidence only if the trust instrument is ambiguous, and we find no ambiguity here." *Ovrevik v. Ovrevik*, 242 Ga. App. 95, 97 (1) (527 SE2d 586) (2000). As previously noted, Item 2 (A) of the Trust Agreement provides that "[t]he annuity amount shall be paid from income and, to the extent income is not sufficient, from principal." Hence, by the express terms of the Trust Agreement, the trustee was only obligated to remit payments to the plaintiffs from income of the Trust, and if income was insufficient, from the principal of the Trust. Moreover, because the Trust states that payments can be made from principal, there is a recognition that payments can deplete the corpus of the Trust, but nothing in the Trust Agreement suggests that the trustee must continue making payments from its own funds if the Trust is depleted.

---

[5] Wells Fargo also argues that the statute of limitations under the Revised Georgia Trust Code of 2010, OCGA § 53-12-307 (a), should apply to the plaintiffs' breach of contract claim and that a trust is not a contract under Georgia law. We do not address these arguments in light of our conclusion that the plaintiffs' contentions are inconsistent with the plain language of the Trust Agreement.

Consequently, the plain language of the Trust Agreement precludes the plaintiffs' argument that Wells Fargo was contractually obligated to pay them an annual distribution for their lives even after the corpus of the Trust had been exhausted. It follows that the trial court erred in denying summary judgment to Wells Fargo on the plaintiffs' breach of contract claim.

*Case No. A15A0203.*

3. The plaintiffs contend that the trial court erred in denying their motion for partial summary judgment on their claim for breach of contract. For the reasons discussed in Division 2, the plaintiffs' claim for breach of contract failed as a matter of law. The trial court thus did not err in denying partial summary judgment to the plaintiffs on their breach of contract claim.

*Judgment reversed in Case No. A15A0202. Judgment affirmed in Case No. A15A0203. Ray and McMillian, JJ., concur.*

21