## A92A1942. FIRST NATIONAL BANK OF GAINESVILLE v. LOGGINS.
### (429 SE2d 278)

BLACKBURN, Judge.

The appellee, Sandra G. Loggins, brought an action against Nationwide Mutual Fire Insurance Company ("Nationwide"), for an unjustified refusal to pay her claim for fire loss and against First National Bank of Gainesville, Georgia ("the bank"), for wrongful foreclosure, wrongful seizure and application of funds maintained in her checking account with the bank, fraud and violation of the state's banking regulations. Both Nationwide and the bank responded. Nationwide subsequently filed a motion for summary judgment asserting that the appellee's claim against the company was time barred based upon a statute of limitation contained within the insurance policy. The bank also moved for summary judgment, maintaining that the appellee was in default on the loan; therefore, their foreclosure on the

property was proper and the foreclosure proceeding was not in violation of any banking regulations. The trial judge denied both motions. Nationwide has not sought an appeal of the trial court's denial of its motion for summary judgment. We granted the bank's application for interlocutory appeal of the trial court's denial of its motion for summary judgment.

The record shows that on October 16, 1987, the appellee and her then husband, Don Loggins, obtained a $55,000 construction loan from the bank and signed a single-payment note for repayment as well as a deed to secure the debt in favor of the bank. On December 22, 1987, the appellee and her husband increased the loan amount to $60,000. The initial due date on the loan was March 22, 1988. However, the loan was subsequently renewed on March 15, 1988, and October 10, 1988, by the appellee and her husband executing new notes, with the last note being due and payable on April 10, 1989. The house was completed in December 1988. In February 1989, as a result of their divorce, the appellee's husband quitclaimed his interest in the property to the appellee, although the deed was not filed until August 16, 1989. On May 1, 1989, the due date on the note was extended by the bank to August 30, 1989, based upon a telephone request of the appellee to William Glosson (Glosson), the assistant vice president of the bank.

The appellee's home was damaged by fire on August 30, 1989, and the appellee did not pay the principal and interest on the loan by its due date of August 30, 1989. According to Glosson's affidavit, the note went into default on August 31, 1989. Glosson maintains that the appellee was mailed foreclosure notices and a copy of the advertisement of the sale that was published in the local newspaper. He admits that after the account went into default, pursuant to the terms of the checking agreement, the bank offset funds from the appellee's checking account and applied the money to the interest balance on the loan on the property as well as another loan that the appellee had with the bank that was in default. The bank purchased the property at the foreclosure sale for $30,000, and whether the property was appraised by the bank before the sale is in dispute. On January 19, 1990, the bank received payment of $54,664.73 from Nationwide and applied it to the appellee's indebtedness, which created an overage, the amount of which is also in dispute.

In her deposition of January 22, 1991, the appellee testified that she did not become aware of any foreclosure proceedings until she received a telephone call from her mother who saw the foreclosure notice in the newspaper. After the fire, she moved to a motel and subsequently moved in with her present husband. In both her affidavit and deposition testimony, the appellee maintains that during her conversations with Glosson after the fire, she was informed that her

property would not be foreclosed upon and she should not worry. He further told her that the insurance proceeds would settle all matters of indebtedness and if she had her attorney talk with him and show him that a claim had been filed with Nationwide, he would stop the foreclosure proceeding. She subsequently informed her attorney of her conversation with Glosson.

In Glosson's affidavit of January 23, 1992, he avers that computer-generated notices were sent to the appellee and her former husband notifying them of the default at their last known address. During his conversations with the appellee after the fire, he informed the appellee of the bank's intention to pursue its remedies. After foreclosure proceedings began, the note was placed in a non-interest earning status. He admits that notices sent out to the appellee in November 1989 were in error because they showed that nothing was due on the principal of the note but interest was shown as being due on the note. However, Glosson asserts that appellee was provided notice of the foreclosure sale in a letter of November 3, 1989, and a copy of the advertisement of such in the local paper. On November 13, 1989, a certified letter was sent to the appellee at the property in question providing the appellee with ten days notice of payment of the principal, interest, and attorney fees on the loan. As a result of the appellant's foreclosure on the appellee's property and seizure of funds maintained in her account with the appellant bank, this action ensued.

In its sole enumeration of error, the bank contends that the trial court erred in denying its motion for summary judgment. We disagree.

In its order of April 15, 1992, denying the bank's motion for summary judgment, the trial court found several issues existed as to whether the note executed by the appellee to the bank was in default, whether the appellant properly notified the appellee of proceedings relating to the foreclosure activities, and whether Nationwide properly settled with the bank. The court also noted that the appellee alleged both in her affidavit and deposition that she was assured by the bank vice president that her property would not be foreclosed upon.

"To prevail on a motion for summary judgment [under OCGA § 9-11-56], a defendant-movant is required to pierce the allegations of the complaint and to establish as a matter of law that the plaintiff could not recover under any theory fairly drawn from the pleadings and the evidence. [Cits.]" *Holiday Inns v. Newton*, 157 Ga. App. 436 (278 SE2d 85) (1981). "[T]he opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. [Cits.]" *Mitchell v. Rainey*, 187 Ga. App. 510, 512-513 (370 SE2d 673) (1988). "[In] sum-

mary judgment proceedings the court is not in a position to weigh the evidence or determine its credibility. . . ." *HOH Co. v. Ethridge*, 168 Ga. App. 20, 22 (2) (308 SE2d 43) (1983). Where the facts alleged in the record create a conflict in the evidence, summary judgment is precluded. *Ethridge*, id. at 22.

In the case sub judice, we agree with the trial court that the facts as asserted in the depositions and affidavits in the record create a conflict as to whether the appellee was actually in default at the time that the property was foreclosed upon, whether Nationwide properly settled with the bank, and whether the appellee was properly notified of the foreclosure proceedings as provided in OCGA §§ 44-14-162 and 44-14-162.2. The determination of these issues is for the trier of fact. Accordingly, summary judgment adjudication was precluded and the decision of the trial court is without error.

*Judgment affirmed. McMurray, P. J., and Cooper, J., concur.*

DECIDED MARCH 3, 1993 —
RECONSIDERATION DENIED MARCH 16, 1993 —

*Stewart, Melvin & House, J. Douglas Stewart*, for appellant.
*Robert E. Andrews*, for appellee.