**SECOND DIVISION
BARNES, P. J.,
MILLER, and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**January 15, 2014**

# In the Court of Appeals of Georgia

A13A2256. SMITH et al. v. SUNTRUST BANK et al.

BARNES, Presiding Judge.

Appellants Rob Smith, Don Smith, Roy Smith, Jr., and Christie Romano are income beneficiaries of a trust created in 1969, and they claim that the trustees breached their fiduciary duties in several respects. Specifically, the appellants claim that the trustees sold the primary asset of the trust to one of the co-trustees and her husband for inadequate consideration in an alleged straw man transaction; that the corporate trustee distributed all of the income in a sub-trust to the same co-trustee in violation of the means-of-support test applicable to the sub-trust; and that the trustees failed to provide them with an annual accounting of the sub-trust as required by the terms of the trust. The trial court held that these claims were barred by the applicable statute of limitation and granted summary judgment to the trustees. On appeal, the appellants argue that the trial court erred in granting summary judgment to the trustees because a genuine issue of material fact exists as to whether the trustees

fraudulently concealed their breaches of fiduciary duty, creating a jury issue as to whether the limitation period had been tolled. For the reasons discussed below, we affirm in part, vacate in part, and remand with instruction.

Summary judgment is proper if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (Citation omitted.) *Gayle v. Frank Callen Boys & Girls Club*, 322 Ga. App. 412 (745 SE2d 695) (2013).

> On summary judgment, a trial court is not authorized to resolve disputed issues of material fact. A trial court is authorized only to determine whether disputed issues of material fact remain. If, and only if, no disputed issue of material fact remains is the trial court authorized to grant summary judgment.

(Citation omitted.) *Ly v. Jimmy Carter Commons, LLC*, 286 Ga. 831, 833 (1) (691 SE2d 852) (2010). Guided by these principles, we turn to the record in this case.

*The Fisher Family Trust.* T. Orr Fisher created the Fisher Family Trust (the "Trust") in 1969 for the benefit of his only child, Emily Fisher Crum, and seventeen

other relatives and their lineal descendants. Mr. Fisher named three trustees: Ms. Crum and S. Spencer Linder as the individual trustees and Trust Company of Georgia n/k/a SunTrust Bank ("SunTrust") as the corporate trustee (collectively, the "Trustees").

The original corpus of the Trust was a 15 percent interest in real estate located along Clairmont Road and Interstate 85 in DeKalb County, Georgia, known as Century Center (the "Century Center Property"). The Century Center Property is under a 90-year ground lease to an office park developer that was signed in 1968 and expires in 2058. The Century Center Property is comprised of approximately 88 acres of land and now contains a large office park development.

Mr. Fisher specifically provided in the Trust that it was his "wish that the trustees retain the interest in the [Century Center Property]," but that he was "impos[ing] no requirement that the same be retained if the trustees determine that it is wise in view of the purposes of the trust that said interest be disposed of." The Trust further provided that during the lifetime of Mr. Fisher and his wife, Bessie Fisher, the interest of the Trust in the Century Center Property could not be disposed of by the Trustees "without the permission of those living of [Mr. Fisher] and his wife."

3

The Trust established three sub-trusts, referred to by the parties as Trusts A, B, and C. Ten percent of the Trust's interest in the Century Center Property was allocated to Trust A, with the income to be distributed to Mr. Fisher's daughter, Trustee Crum, during her lifetime. Trust A is not at issue in this case. Sixty percent was allocated to Trust B, with the income to be distributed equally among 17 named beneficiaries or their descendants per stirpes. The remaining 30 percent was allocated to Trust C, which had the same beneficiaries as Trust B, but also included Trustee Crum as a beneficiary and was to be administered by the corporate trustee, SunTrust. All or a portion of the income from Trust C was to be distributed

> among any one or more of a group consisting of the beneficiaries of [Trust C] as [SunTrust] shall determine necessary for the maintenance, health, support and education of each member of such group, taking into consideration any means of support which any such member is known by [SunTrust] to have, and accumulating any income not so paid.

The Trust further provided that the Trustees "shall each year render an account of their administration of each trust under this instrument to [Mr. Fisher], and if he is not living, to the beneficiaries of a present beneficial interest in each trust hereunder."

Lastly, the Trust contained a termination provision for Trusts B and C stating that "any trust established by this instrument shall terminate, if it has not previously

4

terminated, twenty-one (21) years after the death of the survivor of the [seventeen named beneficiaries of Trust B] living on the date that this instrument is executed." The Trust stated that upon termination, the Trustees were to pay "the then remaining principal and undistributed income" of Trusts B and C to the Fisher Foundation, Inc. or to an alternative remainder beneficiary if the foundation was no longer in existence.[1]

Mr. Fisher died in August 1969, only a few months after creating the Trust. He was survived by his wife, Bessie Fisher, and by his daughter, Trustee Crum. The four Appellants are descendants of one of the original seventeen named beneficiaries of Trust B and C (collectively, the "Appellant Beneficiaries").[2]

*Sale of the Century Center Property.* The Appellant Beneficiaries contend that a decade after the death of Mr. Fisher, on October 1, 1979, the Trustees, unbeknownst to them, conveyed the Trust's ownership interest in the Century Center Property to Trustee Crum and her husband in a straw-man transaction. On that date, the Trustees first conveyed the Trust's 15 percent interest in the Century Center Property to Mr.

---

[1] Trust A contained a separate termination provision under which "the principal and any undistributed income" of the trust would be paid to the Fisher Foundation, Inc. upon the death of Trustee Crum.

[2] There are now 23 total beneficiaries.

Fisher's widow, Bessie Fisher, in exchange for $300,000. Deed records reflect that Mrs. Fisher then immediately conveyed her interest in the Century Center Property to Trustee Crum and her husband. The deeds for the two conveyances were signed the same day, had the same witnesses for the signatures of Mrs. Fisher and Trustee Crum, and were recorded within minutes of one another.[3]

The price paid to the Trust for the Century Center Property was the amount of an appraisal the Trustees had obtained five months earlier. There is no indication in the record that the Century Center Property was otherwise exposed to the market, or that any judicial proceeding was conducted to approve the sale of the Trust's primary asset. The Appellant Beneficiaries presented the affidavit

---

[3] Trustee Linder testified in his deposition that in 1979, there was concern among the Trustees that the developer would "walk away" from the 90-year ground lease because "[t]here had been no development for a series of years" and that, as a result, the income to the Trust generated from the lease "would drop substantially" and the beneficiaries would be harmed. Trustee Linder testified that the conveyance of the Trust's interest in the Century Center Property was done to reduce the risk posed to the Trust by a potential default on the ground lease and was not intended simply as a straw man transaction to enrich Trustee Crum and her husband. Of course, for purposes of summary judgment, all evidence and inferences drawn from it must be construed in the light most favorable to Appellant Beneficiaries as the nonmovants, and neither this Court nor the trial court is authorized to assess the credibility of the various witnesses. See *First Natl. Bank of Gainesville v. Loggins*, 207 Ga. App. 814, 816-817 (429 SE2d 278) (1993).

6

of an expert appraiser who opined that the methodology of the Trust's appraisal was improper and that the Century Center Property had been substantially undervalued at $300,000. The record also includes a letter later written by Trustee Crum and her husband in which they estimated that the income generated from the property upon the expiration of the 90-year ground lease would "be an astronomical figure and could even be great enough to finance the entire operation of a reasonably sized college."

The trust account statements for Trusts A, B, and C for the fourth quarter of 1979 contain a notation under "Principal Cash Balance" stating that the Century Center Property had been "Sold to Bessie A. Fisher on 10-1-79." The Trustees allege that the fourth quarter trust account statements were sent to all then-current beneficiaries of Trusts B and C in 1979, including Appellant Beneficiary Rob Smith and Roy Smith, Sr., the father of the remaining three Appellant Beneficiaries.[4] However, Rob Smith testified that he never received copies of the 1979 account statements and did not learn of the alleged straw man conveyance of the Century Center Property until this litigation commenced in 2011. The Roy Smith Beneficiaries

---

[4] The father of Appellant Beneficiaries Don Smith, Roy Smith, Jr., and Christie Romano died in 1985. As his lineal descendants, they were not substituted as income beneficiaries of Trusts B and C until that time. They will be referred to hereinafter as the "Roy Smith Beneficiaries" for ease of reference.

7

do not deny that their father received the 1979 account statements, but they testified that their father never mentioned the sale of the Century Center Property to them, that they never saw the 1979 account statements themselves, and that they too did not learn of the alleged straw man conveyance until this litigation.

*Income Distributions from Trust C.* As previously noted, under the terms of the Trust, SunTrust as corporate trustee was to pay all or a portion of the income from Trust C to one or more of the beneficiaries for their maintenance, health, support, and education, taking into consideration their other means of support. Despite the means test applicable to distributions from Trust C, Trustee Crum requested from SunTrust that she be paid all of the net income from Trust C to the exclusion of the remaining seventeen beneficiaries because she had advanced funds to help pay the state and federal taxes levied on the estate of her father, Mr. Fisher, following his death in 1969. SunTrust granted her request and distributed the net income from Trust C solely to Trustee Crum on a semiannual basis from the Trust's inception until 1989 without any regard for the means test set forth in the Trust. According to the Appellant Beneficiaries, Suntrust never informed them that it was paying all of the income to Trustee Crum during this time period.

In 1989, SunTrust assigned a new trust officer to handle the administration of the Trust. After reviewing the Trust instrument and determining that it required application of a means test, the new officer discontinued the automatic income distributions from Trust C to Trustee Crum and requested that she provide financial information showing that she needed continued distributions for her support. Trustee Crum refused to provide the requested financial information and contended that she was entitled to receive the total net income from Trust C for the remainder of her lifetime. After a series of correspondence, the trust officer ultimately capitulated and resumed semi-annual distributions of all of the net income from Trust C to Trustee Crum in June 1990 even though she had not provided the financial information necessary for applying the means test.

The trust officer drafted a letter dated June 5, 1990 addressed to the current beneficiaries of Trust C in which she described how income distributions were being handled by the bank. The letter stated that

> Mrs. Emily Fisher Crum has requested that she continue to receive the net income from Trust C for the remainder of her lifetime. . . . As we have not received a request from any of the remaining beneficiaries to receive income from Trust C, we, as Corporate Trustee, are exercising our discretion to continue the distribution of net income to Mrs. Crum. If presently or in the future, any of you have need of additional income

9

and would like to make a request for the Trustee to consider an income distribution to you, please contact us at [a designated phone number] or at the address listed below. SunTrust asserts that the June 5, 1990 letter was sent to all of the beneficiaries of Trust C, including the Appellant Beneficiaries, and that none of the beneficiaries ever complained about the ongoing distribution of the income from Trust C to Trustee Crum. While Beneficiary Ron Smith testified that he never received the June 5, 1990 letter, the Roy Smith Beneficiaries admit that they received it.[5]

SunTrust continued to pay all income from Trust C to Trustee Crum from 1990 onward. In 1998, a subsequent trust officer assigned by SunTrust to administer the Trust reviewed how the issue of income distribution from Trust C had been handled by the bank, described it as a "debacle . . . well documented in the file," and noted that "it is best to leave this issue as is."

The Appellant Beneficiaries testified that despite the fact that the Trust requires a yearly accounting be provided "to the beneficiaries of a present beneficial interest in each trust hereunder," they have never received accounting statements for Trust C reflecting the income distributions to Trustee Crum to the exclusion of all other

---

[5] The record also contains a March 1, 1990 letter from the trust officer addressed to the beneficiaries discussing Trust C and how the income distributions had been handled by SunTrust. SunTrust asserts that the March 1, 1990 letter was sent to all beneficiaries of Trust C, including the Appellant Beneficiaries, but each of them testified that they never received the letter.

10

beneficiaries. Indeed, they testified that were never provided a copy of the Trust instrument from SunTrust or any other source until this litigation. The Appellant Beneficiaries also testified that they have never received any income distributions from Trust C since the time that they became beneficiaries.

*The Present Litigation.* In August 2011, the current Trustees filed a Petition for Trust Modification and Termination of the Trust, which they served on the current beneficiaries, including the Appellant Beneficiaries.[6] The Trustees noted in their petition that the Trust had been in existence for over 40 years, and based on the termination provision, Trusts B and C would continue for at least 21 more years. According to the Trustees, the current market value of the Trust B corpus was approximately $305,000 and of Trust C was approximately $79,200. The Trustees further alleged that the list of Trust beneficiaries, "lengthy at the inception of the Trust," had become more so as named beneficiaries died and multiple lineal descendants have been substituted as beneficiaries, resulting in a "dramatic increase in administrative costs and burdens of the Trust as compared to the size of the Trust corpus." Consequently, the Trustees contended that "the most pragmatic way to

---

[6] Trustee Crum, then 96 years old, no longer served as a co-trustee of the Trust by the time the petition was filed. Evelyn Ayers Hull now serves as a co-trustee of the Trust.

11

accomplish [Mr. Fisher's] purpose [for the Trust would be] to terminate the Trust and distribute the Trust assets among the current beneficiaries to conform to [Mr. Fisher's] intent as nearly as practicable" pursuant to the trial court's equitable powers.

In March 2012,[7] the Appellant Beneficiaries filed their objection to the Trustees' petition, alleging that the Trustees had breached their fiduciary duty when they conveyed the Century Center Property to Trustee Crum in the alleged straw man transaction for below fair market value. They further alleged that SunTrust had breached its fiduciary duty by distributing all of the income from Trust C to Trustee Crum to the exclusion of the other beneficiaries without applying the means test required by the Trust, and by failing to provide them with a yearly accounting of Trust C. The Appellant Beneficiaries sought equitable relief, including that Trustee Crum be required to transfer the 15 percent ownership interest in the Century Park Property back to the Trust, and that SunTrust be required to reimburse Trust C for the fees it paid itself and for the income distributions made to Trustee Crum.

The Trustees thereafter moved for summary judgment on several grounds, including that the breach of fiduciary duty claims raised by the Appellant

---

[7] The Appellant Beneficiaries were provided an extension of time to respond to the Trustee's petition.

Beneficiaries were barred by the applicable statute of limitation. The Appellant Beneficiaries opposed the motion, contending that there were genuine issues of material fact as to whether the Trustees had fraudulently concealed their breaches of fiduciary duty and thus as to whether the limitation period had been tolled. Following a hearing, the trial court granted the Trustees' motion for summary judgment, concluding that the statute of limitation barred the breach of fiduciary duty claims as a matter of law. The trial court did not address the Trustees' remaining arguments for why summary judgment should be granted. The Appellant Beneficiaries now appeal from the trial court's summary judgment order.

1. The Appellant Beneficiaries first contend that the trial court erred in concluding that the statute of limitation barred the claim that the Trustees breached their fiduciary duty when they conveyed the Century Center Property to Trustee Crum and her husband in the alleged straw man transaction for below fair market value. The Appellant Beneficiaries contend that there is evidence from which a jury could find that the Trustees fraudulently concealed their breach of fiduciary duty, thereby tolling the limitation period until the breach was discovered. We agree.

Under the Revised Georgia Trust Code of 2010, a beneficiary must bring his or her breach of trust claim against a trustee "within six years after the beneficiary

13

discovered, or reasonably should have discovered, the subject of such claim." OCGA § 53-12-307 (a).[8] The statute of limitation is shortened to two years "if a beneficiary has received a written report that adequately discloses the existence of a claim against the trustee for a breach of trust." Id. See *Hasty v. Castleberry*, __ Ga. __ (2) (Case Nos. S13A0989, S13A1189, and S13A1190, decided Oct. 7, 2013).[9]

---

[8] While the Revised Georgia Trust Code became effective July 1, 2010, its provisions apply to any trust irrespective of the date the trust was created, with two exceptions: "to the extent it would impair vested rights" and "except as otherwise provided by law." OCGA § 53-12-1 (b). See *McPherson v. McPherson*, 307 Ga. App. 548, 550 (1) (a) (705 SE2d 314) (2011). The parties have not shown that either exception applies here. "There is no vested right in a statute of limitation." (Punctuation and footnote omitted.) *Huggins v. Powell*, 315 Ga. App. 599, 602 (1) (726 SE2d 730) (2012). See *Vaughn v. Vulcan Material Co.*, 266 Ga. 163, 164 (1) (465 SE2d 661) (1996); *Hunter v. Johnson*, 259 Ga. 21, 22 (1) & (2) (376 SE2d 371) (1989). Moreover, neither party has pointed to any other law that would preclude the application of OCGA § 53-12-307 (a) in the present case. Accordingly, we will apply the statute of limitation found in the Revised Georgia Trust Code.

[9] To the extent that *Mayfield v. Heiman*, 317 Ga. App. 322, 326 (2) (730 SE2d 685) (2012) suggests that OCGA § 53-12-307 (a) does not apply retroactively, that suggestion is non-binding dicta. In *Mayfield*, the question at issue was whether the plaintiffs, as a matter of law, had failed to exercise due diligence to discover the alleged fraudulent concealment by the defendants. See id. at 326-328 (2). This Court answered in the affirmative and affirmed the grant of summary judgment to the defendants on the ground that the limitation period had not been tolled. See id. Hence, the issue in *Mayfield* was not the length of the applicable limitation period, but whether that period had been tolled by fraudulent concealment.

14

The limitation period, however, may be tolled by a trustee's fraudulent conduct. OCGA § 9-3-96 provides that "[i]f the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud."

> [T]o establish fraudulent concealment under this statute sufficient to toll the statute of limitation, a plaintiff must prove that: (1) the defendant committed actual fraud involving moral turpitude, (2) the fraud concealed the cause of action from the plaintiff, and (3) the plaintiff exercised reasonable diligence to discover his cause of action despite his failure to do so within the applicable statute of limitation. However, when a confidential relationship exists, such as between [the trustee and beneficiaries of a trust], the plaintiff's duty to investigate is decreased, and the defendant's duty to disclose is increased. In such situations, silence when one should speak, or failure to disclose what ought to be disclosed, is as much a fraud in law as is an actual false representation.

(Punctuation and footnotes omitted.) *Cochran Mill Assoc. v. Stephens*, 286 Ga. App. 241, 245 (1) (648 SE2d 764) (2007). See *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 848-849 (1) (507 SE2d 411) (1998); *Goldston v. Bank of America Corp.*, 259 Ga. App. 690, 693-696 (577 SE2d 864) (2003).

15

On motion for summary judgment, "the movant has only the burden of proof as to [the] affirmative defense of the running of the statute of limitation and not to establish the absence of facts showing a tolling." (Punctuation and footnote omitted.) *Mayfield v. Heiman*, 317 Ga. App. 322, 328 (2) (730 SE2d 685) (2012). The burden of persuasion then shifts to the nonmovant "to present some evidence showing that an issue exists that the statute has not run but has been tolled." (Punctuation and footnote omitted.) Id. Generally speaking, the question of whether there was fraudulent concealment justifying the tolling of the limitation period "is a proper question for determination by a jury under proper instructions from the court." *Brown v. Brown*, 209 Ga. 620, 622 (7) (75 SE2d 13) (1953).

Mindful of these principles, we conclude that the Appellant Beneficiaries came forward with evidence that the Trustees fraudulently concealed their breach of fiduciary duty, and thus presented some evidence showing that a genuine issue of material fact exists concerning whether the limitation period had been tolled. As a fiduciary, a trustee is required to act for the benefit of the beneficiaries "on all matters within the scope of their relationship" and owes to them "the duties of good faith, trust, confidence, and candor." Black's Law Dictionary (9th ed. 2009) (defining "fiduciary"). See OCGA § 53-12-246 ("A trustee shall administer the trust solely in

16

the interests of the beneficiaries."); *Perdue v. McKenzie*, 194 Ga. 356, 368 (3) (21 SE2d 705) (1942) (trustee "owes an undivided duty to the beneficiary").

Consequently, trustees are "accountable to the beneficiar[ies] for the trust property," OCGA § 53-12-300, and must "exercise the highest degree of good faith as to all matters connected with the property committed to their care." *Oliver v. Oliver*, 118 Ga. 362, 369-370 (45 SE 232) (1903). It follows that, as a general rule, a trustee cannot purchase the property belonging to the trust estate, see *Edwards v. Collins*, 207 Ga. 204, 205 (1) (60 SE2d 337) (1950), and certainly cannot "make a personal profit in dealing with trust property." *Fine v. Saul*, 183 Ga. 309, 314 (3) (188 SE 439) (1936). See Restatement (Third) of Trusts § 78, cmt. d (noting that "it is a breach of trust for the trustee personally to buy property held in the trust"); George Gleason Bogert et al., The Law of Trusts and Trustees § 543 (A) (3rd ed.) (updated Sept. 2013) ("The trustee owes a duty to the beneficiary not to buy trust property for himself, at his own sale, whether public or private. If he does assume the position of such a buyer, he becomes disloyal to the beneficiary in that he may be seeking private advantage at a time when his sole effort should be the enhancement of the interests of the beneficiary.") (emphasis omitted).

17

Here, the evidence as discussed above would authorize a jury to find that the Trustees breached their fiduciary duty by conveying the Century Center Property to Trustee Crum and her husband at a price below fair market value. The evidence would further authorize the jury to find that the Trustees fraudulently concealed their breach of fiduciary duty from the beneficiaries by conveying the Century Center Property to Trustee Crum and her husband through a "straw man" (i.e., Bessie Fisher). A "straw man" is "[a] third party used in some transactions as a temporary transferee to allow the principal parties to accomplish something that is otherwise impermissible." Black's Law Dictionary (9th ed. 2009). See *Houston v. Bryan*, 78 Ga. 181, 185 (1 SE 252) (1886) (trustee's purchase of trust property cannot be accomplished indirectly "through the interposition of another person"). See also The Law of Trusts and Trustees, supra, § 543 (A) (condemning use of straw man and noting that "[i]f the third party appears to have been used as a dummy or straw man, the beneficiary will have the same rights as if the sale had been direct to the trustee"). By using a straw man for the conveyance, the Trustees violated their "duty to give full and fair disclosure in a timely manner of all known things adversely affecting the . . . beneficiaries' rights in the subject matter of the dealings," *Liner v. North*, 188 Ga. App. 677, 679 (2) (373 SE2d 846) (1988), and "to disclose . . . the true state of the

18

transaction," *Brown*, 209 Ga. at 621 (6). Accordingly, we conclude that the Trustees' use of a straw man created a jury issue on the question of fraudulent concealment. See id. at 620-621 (2) (limitation period tolled where "the plaintiffs had a right to expect a full revelation of all pertinent facts which might jeopardize their rights in the property entrusted to the defendant," and the defendant failed to reveal those facts to them); *Goldston*, 259 Ga. App. at 692-696 (limitation period tolled where there was evidence that trustee bank sold assets of the trust to an interested third party for less than fair market value and then failed to disclose the transaction to the beneficiaries).

The Trustees argue, however, that their conveyance of the Century Center Property was adequately disclosed to the Appellant Beneficiaries in the trust account statements for Trust B and C for the fourth quarter of 1979, which contained a notation under "Principal Cash Balance" noting that the Century Center Property had been "Sold to Bessie A. Fisher on 10-1-79." According to the Trustees, the fourth quarter account statements constituted a written "report" that adequately disclosed the existence of a claim to beneficiaries, thereby triggering the running of the shortened two-year limitation period set forth in OCGA § 53-12-307 (a). The Trustees further argue that the Appellant Beneficiaries failed to exercise due diligence as a matter of

law when they did not investigate the conveyance any further in response to the fourth quarter account statements. We are unpersuaded.[10]

First, the fourth quarter account statements were not a "report" that adequately disclosed the existence of a claim to beneficiaries under OCGA § 53-12-307 (a). Our Supreme Court recently held that a "report" under this statutory provision should be construed to mean a report from a trustee to a beneficiary containing "detailed information" that includes "the assets, liabilities, receipts, and disbursements of the trust, the acts of the trustee, and the particulars relating to the administration of the trust, including the trust provisions that describe or affect such beneficiary's interest." *Hasty*, __ Ga. at __ (2). See OCGA § 53-12-243 (a). The excerpts from the fourth quarter statements contained in the record, with their incomplete disclosure of the nature of the conveyance of the Century Center Property, "do not contain the type of

---

[10] As previously noted, the Appellant Beneficiaries contend that they never saw or received the fourth quarter account statements. As to the Roy Smith Beneficiaries, whose father was the beneficiary of the Trust in 1979, the Trustees argue that the father's receipt of the account statements also served as notice of the conveyance to his children under the doctrine of "virtual representation." The Roy Smith Beneficiaries argue in response that "virtual representation" does not apply in Georgia outside the limited context of a judicial proceeding. We need not resolve this issue in light of our decision that the scope of the disclosure contained in the fourth quarter accounts statements was insufficient to entitle the Trustees to judgment as a matter of law on the tolling issue.

20

detailed information contemplated by Legislature" so as to qualify as a "report" sufficient to trigger the running of the shortened two-year limitation period. See *Hasty*, __ Ga. at __ (2).

Second, in light of the limited scope of the disclosure in the fourth quarter accounting statements, there is a genuine issue of material fact concerning whether the Appellant Beneficiaries exercised due diligence to discover that the Trustees had fraudulently conveyed the Century Center Property to Trustee Crum and her husband. "Whether a [party] exercised reasonable care in discovering the fraud is generally a jury question." *Federal Ins. Co. v. Westside Supply Co.*, 264 Ga. App. 240, 243 (2) (590 SE2d 224) (2003). And in the context of a fiduciary relationship, there is "a greater duty on the parties to reveal what should be revealed and a lessened duty to discover independently what could have been discovered through the exercise of ordinary care." *Yarbrough v. Kirkland*, 249 Ga. App. 523, 526 (2) (548 SE2d 670) (2001).

The fourth quarter account statements disclosed only the sale to the straw buyer, Bessie Fisher, and thus was not a complete disclosure of all material facts relating to the conveyance of the Century Center Property. "Suppression of a material fact which a party is under an obligation to communicate constitutes fraud." OCGA

§ 23-2-53. Furthermore, "[d]ue to the fiduciary relationship[,] the beneficiary may rely implicitly, not only on what is said, but also on the supposition that nothing important will be left unsaid by the [trustee]." (Citation and punctuation omitted.) *Gen. Information Processing Sys. v. Sweeney*, 176 Ga. App. 315, 316 (335 SE2d 722) (1985). See *Oliver*, 118 Ga. at 371. Furthermore, a jury could find that the incomplete disclosure was inherently deceptive because the Trust authorized the Trustees to sell the Century Center Property if they determined that it was wise to do so "in view of the purposes of this trust" and if they obtained the permission of "of those living of [Mr. Fisher] and his wife," namely, Bessie Fisher.[11] By only disclosing that the conveyance was to Bessie Fisher and thus was done with her permission, the account statements suggested that the Trustees were complying with the provisions of the Trust for the conveyance of the Century Center Property and that the transaction was open and above-board. Under these circumstances, we conclude that a jury must resolve whether the Appellant Beneficiaries exercised due diligence in discovering the alleged fraudulent conveyance of the Century Center Property to Trustee Crum and her husband. See *Miller v. Lomax*, 266 Ga. App. 93, 98 (2) (b) (596 SE2d 232) (2004) (genuine issue of material fact existed regarding whether plaintiff should have

[11] As noted above, Mr. Fisher died in 1969 shortly after creating the Trust.

discovered fraudulent transfer of funds, where notation on check mischaracterized an improper gift to a third party as "loan proceeds"); *Federal Ins. Co.*, 264 Ga. App. at 244-245 (2) (whether defendants "engaged in trickery and artifice" that delayed plaintiff from discovering the fraud was a jury question).

For these combined reasons, we conclude that the trial court erred in granting summary judgment to the Trustees on the ground that the Appellant Beneficiaries' breach of fiduciary duty claim pertaining to the conveyance of the Century Center Property was barred by the statute of limitation. Genuine issues of material fact exist concerning whether the Trustees fraudulently concealed their breach of fiduciary duty and whether the Appellant Beneficiaries exercised due diligence in discovering the fraud.

2. The Appellant Beneficiaries next contend that the trial court erred in concluding that the statute of limitation barred their claim that SunTrust breached its fiduciary duty by distributing all of the net income from Trust C to Trustee Crum to the exclusion of the other beneficiaries without applying the means test required by the Trust. According to the Appellant Beneficiaries, they presented evidence from which a jury could find that SunTrust fraudulently concealed its improper distribution

23

of the income from Trust C, thereby tolling the limitation period until they first discovered the fraud.

(a) We agree with Beneficiary Rob Smith that he presented some evidence that SunTrust fraudulently concealed from him the alleged improper distribution of income from Trust C to Trustee Crum to the exclusion of all of the other beneficiaries. Specifically, he testified that SunTrust never provided him with a copy of the Trust instrument so that he would know his rights to disbursement with respect to Trust C, never informed him that he was potentially entitled to distributions as a beneficiary of Trust C, and never provided him with an annual accounting of the disbursements from Trust C despite being required to do so by the Trust. Beneficiary Rob Smith further pointed out that in 1998, a trust officer with SunTrust reviewed how the issue of income distribution from Trust C had been handled by the bank, described it as a "debacle," and determined that "it is best to leave this issue as is."

Based on this combined evidence, a jury could find that SunTrust fraudulently concealed from Beneficiary Rob Smith its improper distribution of the income from Trust C, thereby tolling the limitation period until he first discovered the misconduct. See *Goldston*, 259 Ga. App. at 692-696 (limitation period tolled where, among other things, there was evidence that trustee bank failed to even tell beneficiaries of

24

existence of trust and never provided accounting or annual reports to beneficiaries as required by terms of the trust). And while SunTrust claims that its June 5, 1990 letter to beneficiaries put Beneficiary Rob Smith on notice of the alleged improper distributions and thus showed that he failed to exercise due diligence to discover the misconduct, Smith testified that he never saw or received the letter, creating a genuine issue of material fact over the issue. Accordingly, the trial court erred in concluding that Beneficiary Rob Smith's breach of fiduciary duty claim was barred by the statute of limitation as a matter of law.

(b) We reach a different result with regard to the Roy Smith Beneficiaries. Their breach of fiduciary duty claims pertaining to the income distributions from Trust C were not tolled because, as a matter of law, they failed to exercise due diligence to discover the alleged improper disbursements. Significantly, in contrast to Beneficiary Rob Smith, the Roy Smith Beneficiaries admitted that they received the June 5, 1990 letter from SunTrust. As previously noted, the June 5, 1990 letter stated that Trustee Crum had "requested that she continue to receive net income from Trust C for the remainder of her lifetime" and that no other beneficiaries had requested any income distributions from Trust C. The letter further stated that as a result, SunTrust was "exercising [its] discretion" to continue the distribution of the

net income to Trustee Crum. The letter also invited any of the beneficiaries to make a request to be considered for an income distribution if needed at any time in the future.

"Though the level of diligence required by the plaintiff in investigating the fraud is lessened where a confidential relationship exists, it is not entirely extinguished." *Cochran Mill Assoc.*, 286 Ga. App. at 247 (2). Hence, while "issues concerning a plaintiff's diligence in discovering fraud usually must be resolved by the trier of fact, this is not always the case. A party may fail to exercise due diligence as a matter of law." (Citation and punctuation omitted.) *Nash v. Ohio Nat. Life Ins. Co.*, 266 Ga. App. 416, 418 (1) (597 SE2d 512) (2004).

The June 5, 1990 letter specifically informed the Roy Smith Beneficiaries that Trustee Crum had been receiving the distributions of net income from Trust C and would continue to receive them on an ongoing basis. Thus, the very mismanagement of Trust C now alleged by the Roy Smith Beneficiaries was revealed to them in a document provided by SunTrust over 20 years before they asserted any claims based on that mismanagement in this litigation. Under these circumstances, the Roy Smith Beneficiaries failed to exercise due diligence as a matter of law and thus could not establish fraudulent concealment. It follows that the trial court committed no error in

26

concluding that their breach of fiduciary duty claims pertaining to the distributions from Trust C had not been tolled. See *Mayfield*, 317 Ga. App. at 325-329 (2) - (4) (a) (limitation period not tolled by fraud, despite allegation that trustee misled beneficiaries about loan transaction entered into on behalf of the trust, where evidence showed that beneficiaries had acquisition agreements in their possession that provided them with the material terms of the loan)*; Hendry v. Wells*, 286 Ga. App. 774, 780-781 (1) (650 SE2d 338) (2007) (limitation period not tolled by fraud, despite fact that defendant partners sent several communications to the plaintiff partners that contained misleading information about contents of partnership agreement, where plaintiffs had in their possession the partnership agreement and thus were on notice of its true contents); *Allen v. Columbus Bank & Trust Co.*, 244 Ga. App. 271, 273-274 (1) (534 SE2d 917) (2000) (limitation period not tolled by fraud, even if defendant bank's trust officer sent letter to plaintiff containing false and misleading statements about the trust's yields, where plaintiff regularly received account statements from bank showing the actual yields of the trust).

Nevertheless, although the limitation period was not tolled on their claims, the statute of limitation does not bar the Roy Smith Beneficiaries from asserting their breach of fiduciary duty claims for the alleged improper income distributions to

27

Trustee Crum that occurred within six years of the filing of their claims in this case. Each act of alleged mismanagement by a trustee that detrimentally affects a beneficiary creates a new cause of action for that specific act of mismanagement. See *Allen*, 244 Ga. App. at 272 (cause of action accrued for beneficiary each time trustee made an investment that constituted mismanagement detrimentally affecting the beneficiary). See also *Mayfield*, 317 Ga. App. at 329 (4) (b) (court must "look[] to each of the beneficiary's specific claims of acts of mismanagement to determine when her causes of action accrued"); *Hamburger v. PFM Capital Mgmt.*, 286 Ga. App. 382, 387 (2), n. 19 (649 SE2d 779) (2007) (noting that a new "cause of action for breach of fiduciary duty accrues each time defendant commits a wrongful act that causes appreciable damage"). Thus, each alleged improper income distribution by SunTrust to Trustee Crum that harmed the Roy Smith Beneficiaries constituted a separate cause of action for breach of fiduciary duty. See *Allen*, 244 Ga. App. at 272. As such, given that the applicable statute of limitation in this case is six years,[12] the Roy Smith Beneficiaries were not barred from asserting their breach-of-fiduciary duty claims

_____

[12] See OCGA § 53-12-307 (a). See also supra note 8. We note that the June 5, 1990 letter did "not contain the type of detailed information contemplated by Legislature" so as to qualify as a written "report" sufficient to trigger the running of the shorter two-year limitation period. See *Hasty*, __ Ga. at __ (2).

28

predicated on alleged improper distributions by SunTrust that occurred within six years of the filing of their claims in this litigation, and the trial court erred in concluding otherwise. See id.

3. Lastly, the Appellant Beneficiaries contend that the trial court erred in concluding that the statute of limitation barred their claim that SunTrust breached its fiduciary duty by failing to provide them with an annual accounting of Trust C despite being required to do so by the Trust instrument. According to the Appellant Beneficiaries, there was evidence that SunTrust fraudulently concealed from them that the bank was breaching its duty to provide all of the beneficiaries an annual accounting of the income distributions from Trust C, thereby tolling the limitation period on this claim.

(a) The same evidence discussed supra in Division 2 (a) with respect to Beneficiary Rob Smith would support a finding by the jury the SunTrust fraudulently concealed from him that the bank was breaching its duty to provide him with an annual accounting. Consequently, the trial court erred in concluding that his claim was barred by the statute of limitation because a genuine issue of material fact exists regarding whether the limitation period was tolled on the ground of fraudulent concealment.

(b) Again, we reach a different result with regard to the Roy Smith Beneficiaries. The June 5, 1990 letter put them on notice that they were current beneficiaries with certain rights to disbursement under Trust C, but they nevertheless took no steps to obtain a copy of the Trust instrument to ascertain the exact parameters of those rights (including the right to an annual accounting) until this litigation. Consequently, for the same reasons discussed supra in Division 2 (b), the Roy Smith Beneficiaries failed to exercise due diligence. Nevertheless, the statute of limitation did not bar their claims for the failure of SunTrust to provide them with an annual accounting within the six years of their filing of their claims in this case, given that, as previously explained, each act of alleged mismanagement by a trustee that detrimentally affects the beneficiary creates a new cause of action for that specific act of mismanagement. See *Allen*, 244 Ga. App. at 272 .

4. In their brief, the Trustees request this Court to rule on additional grounds for summary judgment that they raised below, but were not ruled upon by the trial court in its order. Pursuant to *City of Gainesville v. Dodd*, 275 Ga. 834, 838-839 (573 SE2d 369) (2002), we decline to address the additional grounds not ruled upon by the trial court and which have not been adequately briefed by the parties before this Court. See *Zurich American Ins. Co. v. Heard*, 321 Ga. App. 325, 333 (5) (740 SE2d

30

429) (2013). On remand, the trial court can consider in the first instance the additional grounds raised by the Trustees in support of their motion for summary judgment.

In sum, we conclude that the trial court erred in ruling that the applicable statute of limitation barred, as matter of law, the following claims: the Appellant Beneficiaries' claim that the Trustees breached their fiduciary duty when they conveyed the Century Center Property to Trustee Crum and her husband through an alleged straw man transaction for below fair market value; Beneficiary Rob Smith's claim that SunTrust breached its fiduciary duty by improperly distributing all of the net income from Trust C to Trustee Crum and by failing to provide him with annual accountings of Trust C; and the Roy Smith Beneficiaries' claims relating to Trust C predicated on acts of alleged misconduct by SunTrust that occurred within six years of the filing of their claims in this litigation. These rulings by the trial court are vacated, and the case is remanded with the instruction that the court consider in the first instance the additional grounds for summary judgment asserted by the Trustees. In contrast, we conclude that the trial court committed no error in ruling that the applicable statute of limitation barred, as a matter of law, the Roy Smith Beneficiaries' claims relating to Trust C predicated on acts of alleged misconduct by

SunTrust that occurred more than six years before the filing of their claims in this litigation. The trial court's ruling in that respect is, therefore, affirmed.

*Judgment affirmed in part; vacated in part; and case remanded with instruction. Miller and Ray, JJ., concur.*