**THIRD DIVISION
DOYLE, P. J.,
REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 24, 2021**

# In the Court of Appeals of Georgia

A21A0142. COE et al. v. PROSKAUER, LLP.

REESE, Judge.

Douglas ("Doug") Coe, Jacqueline Coe, and GFLIRB, LLC (collectively, the "Appellants") filed a renewal action against Proskauer Rose, LLP, ("Proskauer") related to a legal opinion letter provided to the Appellants. Proskauer subsequently filed a motion to dismiss, which the trial court converted to a motion for summary judgment, providing the parties 30 days to present any evidence pertinent to the motion. Following a hearing, the trial court ruled in favor of Proskauer, and the Appellants appealed the court's order. For the reasons set forth infra, we affirm.

Viewed in the light most favorable to the nonmoving party,[1] the record shows the following. In 2001, the Appellants were involved in the sale of a company in which they owned substantial stock. BDO Seidman, LLP, ("BDO") who had served as Doug Coe's accountants since 1985, approached him regarding a strategy ("distressed debt strategy") they claimed would allow him to avoid capital gains taxes. According to BDO, the distressed debt strategy would involve investments in distressed debt with Gramercy, an investment advisor company, and would be supported by a legal opinion letter from an independent law firm. BDO and Gramercy told Doug Coe that Proskauer could issue the legal opinion letter and would provide legal support in the face of an audit or dispute with the Internal Revenue Service ("IRS"). Following these conversations with BDO and Gramercy, the Appellants agreed to proceed with the distressed debt strategy for their 2001 tax year.

The Appellants alleged that prior to approaching them, Proskauer served as BDO's legal counsel, that BDO and Proskauer had agreed that BDO could market the distressed debt strategy to its clients, and that Proskauer would provide supporting opinion letters endorsing the strategy. The Appellants also alleged that Proskauer,

_____

[1] See *Simprop Acquisition Co. v. L. Simpson Charitable Remainder Unitrust*, 305 Ga. App. 564 (1) (699 SE2d 860) (2010).

2

BDO, and Gramercy had a fee-sharing arrangement in place related to the distressed debt strategy. The Appellants claimed they were never informed that Proskauer advised BDO and Gramercy on the distressed debt strategy, or that the parties had a fee sharing arrangement in place, although Proskauer did inform them that it represented BDO and Gramercy "in connection with various matters[.]"

Proskauer provided the Appellants a legal opinion letter on April 15, 2002. The letter stated that, inter alia, the distressed debt strategy should not be subject to penalties under the Internal Revenue Code, and that "[t]here is a greater than fifty percent . . . likelihood that the tax treatment of the Transactions would be upheld if challenged by the [IRS]." However, the Appellants claimed that Proskauer failed to disclose to them that the firm had informed BDO around the same time it issued the Appellants' opinion letter that the chance of an audit for anyone following the distressed debt strategy was almost 100 percent.

On January 11, 2005, the IRS initiated an audit of the Appellants' 2001 tax return. The Appellants retained alternative counsel during the audit, and entered into a settlement agreement with the IRS in January 2012. Between February and early July 2009, four former BDO partners pled guilty to federal charges related to their involvement with tax shelters, and on June 13, 2012, BDO entered into a deferred

3

prosecution agreement with the United States Department of Justice due to its involvement with these tax shelters.

The Appellants filed suit against Proskauer in December 2015. The parties agreed to dismiss the case without prejudice, and the Appellants refiled on August 16, 2017.

Proskauer filed a motion to dismiss, which the trial court converted into a motion for summary judgment. The court invited the parties to submit evidence in support of their motions. Following a hearing, the trial court granted summary judgment in favor of Proskauer. The Appellants now appeal.[2]

"[A] de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant."[3]

---

[2] Appellants filed an amended complaint after the trial court had ruled on the motion for summary judgment forming the basis of this appeal. We will not consider this amended pleading as it was not before the trial court at the time of its ruling. See *RC Cola Bottling Co. v. Vann*, 220 Ga. App. 479, 480 (1) (469 SE3d 523) (1996) ("Appellate courts will review only evidence presented to the trial court before its ruling on the motion. Additional evidence will not be admitted on appeal.") (citations and punctuation omitted).

[3] *Martin v. Herrington Mill*, 316 Ga. App. 696, 697 (730 SE2d 164) (2012) (punctuation and footnote omitted).

Additionally, "[w]e review a trial court's decision on a motion to strike for abuse of discretion."[4] Further,

> [t]he grant or denial of a motion for protective order generally lies within the sound discretion of the trial court. We therefore will not reverse absent an abuse of that discretion. The trial court is in the best position to make determinations on these issues, and we will not overrule its judgment if there is any reasonable evidence to support it.[5]

With these guiding principles in mind, we now turn to the Appellants' claims of error.

1. The Appellants argue that the trial court erred by granting Proskauer's motion for summary judgment based on the applicable statute of limitation.

The statute of limitation for attorney malpractice, fraud, and negligent misrepresentation is four years.[6] The statute of limitation for breach of fiduciary duty

---

[4] *Elrod v. Sunflower Meadows Dev.*, 322 Ga. App. 666, 669 (2) (745 SE2d 846) (2013); see *Hayward v. The Kroger Co.*, 317 Ga. App. 795, 797 (1) (733 SE2d 7) (2012) (holding that a motion to strike an affidavit is reviewed for abuse of discretion).

[5] *Douglas Asphalt Co. v. Linnenkohl*, 320 Ga. App. 427, 429 (1) (741 SE2d 169) (2013) (citation and punctuation omitted).

[6] See *Nash v. Ohio Nat. Life Ins. Co.*, 266 Ga. App. 416, 417 (1) (597 SE2d 512) (2004) ("The statute of limitation for claims alleging fraud and misrepresentation is four years."); *Denson v. Maloy*, 239 Ga. App. 778, 779 (1) (521 SE2d 666) (1999) ("The four-year statute of limitation applicable to legal malpractice claims runs from the date of the alleged incident of malpractice. . . . The four-year

5

is either four or six years depending on whether the damages claimed are to personalty or pursuant to a written contract.[7]

> It has long been recognized and is well established that a statute of limitation begins to run on the date a cause of action on a claim accrues. In other words, the period within which a suit may be brought is measured from the date upon which the plaintiff could have successfully maintained the action.[8]

Additionally, "[i]t is well-settled in this state that in a malpractice action for damages against an attorney, the statute of limitation runs from the date of the breach of the duty and not from the time when the extent of the resulting injury is ascertained nor from the date of the client's discovery of the error."[9]

---

statute of limitation applicable to fraud claims runs from the date actual injury occurs.") (citations and punctuation omitted).

[7] *Godwin v. Mizpah Farms,* 330 Ga. App. 31, 42 (3) (c) (766 SE2d 497) (2014) (holding that a four-year statute of limitation applies to a breach of fiduciary duty when the underlying damage was to one's personalty); *Crosby v. Kendall*, 247 Ga. App. 843, 849 (2) (c) (545 SE2d 385) (2001) ("[B]reach of fiduciary duty, which arise out of a breach of the escrow agent agreements, was six years pursuant to OCGA § 9-3-24.").

[8] *Jankowski v. Taylor, Bishop & Lee*, 246 Ga. 804, 805 (273 SE2d 16) (1980).

[9] *Hyman v. Jordan*, 201 Ga. App. 852, 853 (1) (412 SE2d 615) (1991) (citations and punctuation omitted).

Here, the Appellants did not file suit until December 31, 2015. Under Georgia law, a cause of action accrues on the date when the plaintiff could maintain the action.[10] As Proskauer issued the legal opinion letter in 2002, which the Appellants alleged was not tailored to their situation and was knowingly unreliable, the Appellants would have been able to maintain a cause of action at this point as it constituted the date of the alleged breach and malpractice.[11] Therefore, December 2015 fell well outside the limitation period for any claims that began to accrue in 2002.

However, the Appellants argue, relying on *Mauldin v. Weinstock*,[12] that Georgia law provides special treatment for malpractice claims that involve pending proceedings. Although this Court in *Mauldin* did note that "where . . . the viable

---

[10] *Jankowski*, 246 Ga. at 805.

[11] See *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 845 (507 SE2d 411) (1998) ("[T]he statute of limitation for legal malpractice actions runs from the date of the alleged incident of malpractice."); see also *Frates v. Sutherland, Asbill & Brennan*, 164 Ga. App. 243, 244 (1) (296 SE2d 788) (1982) ("The statute commences to run from the date of the breach of duty, and not from the time when the extent of the resulting injury is ascertained.") (citation and punctuation omitted).

[12] 201 Ga. App. 514 (411 SE2d 370) (1991).

underling action remains pending[ ]" the plaintiff cannot prove an injury,[13] this case

is distinguishable from the present matter. In *Mauldin*, the plaintiff sued his attorney

for malpractice after the plaintiff's former employer deemed untimely an appeal letter

disputing the plaintiff's termination.[14] The administrative board, designated to hear

employment disputes, adjourned without addressing the timeliness issue regarding the

appeal, and the plaintiff did not allow his attorney to bring suit to challenge the

issue.[15] This Court in *Mauldin* determined that "[the plaintiff's] conduct in effect

prevented [the attorney] from judicially establishing that he had not filed an untimely

administrative appeal."[16] Although *Mauldin* referenced the "pending" proceeding of

the administrative board, the main issue centered more on the plaintiff's waiver of his

right to sue as he did not allow his attorney to challenge the timeliness issue.[17] Here,

in contrast, the IRS audit was not permanently "pended," and judicial examination of

the central issue has not been precluded. In fact, the IRS audit concluded, and the

---

[13] Id. at 518 (4) (citation and punctuation omitted).

[14] Id. at 515-516.

[15] Id.

[16] Id. at 519 (4).

[17] See Id. at 518-519.

8

Appellants have filed suit regarding Proskauer's alleged malpractice. Therefore, we conclude that *Mauldin* does not provide grounds for postponing the accrual of the Appellants' underlying legal malpractice claim.[18]

2. The Appellants also argue that the trial court erred in finding that their causes of action were not tolled. Specifically, they contend that in cases involving a breach of the fiduciary duty of disclosure, their claims were tolled until the audit was complete because Proskauer, as their fiduciary, remained silent during the Appellants' audit.

"Once the movant has presented evidence that the claim is time-barred, the burden of persuasion then shifts to the nonmovant to present some evidence showing that an issue exists that the statute has not run but has been tolled."[19] To establish fraudulent concealment sufficient to toll the statute of limitations, "a plaintiff must

---

[18] See *Jankowski*, 246 Ga. at 806 (1) (holding in legal malpractice cases a right of action arises immediately upon the wrongful act having been committed and "the fact that nominal damages may be recovered is sufficient to create a cause of action"). Additionally, although the Appellants rely on *Clark v. Deloitte & Touche LLP*, 34 P3d 209 (Utah 2001), we find this case unpersuasive. In fact, the court in *Clark* notes that in some states, including Georgia, "the statute of limitation begins to run when the incorrect tax return is filed or the bad tax advice is given. These jurisdictions have not adopted a discovery rule for cases involving professional malpractice." Id. at 213.

[19] *Godwin*, 330 Ga. App. at 40 (3) (b) (citation and punctuation omitted).

prove that: (1) the defendant committed actual fraud involving moral turpitude, (2) the fraud concealed the cause of action from the plaintiff, and (3) the plaintiff exercised reasonable diligence to discover his cause of action despite his failure to do so within the applicable statute of limitation."[20] However, "[w]hen a fiduciary relationship has been established, it is not necessary for a plaintiff to show some affirmative act involving moral turpitude, i.e., that some trick or artifice[ ] was employed to prevent inquiry or elude investigation, or to mislead and hinder the party who has the cause of action from obtaining information."[21]

Here, the Appellants claim that because they shared a fiduciary relationship with Proskauer, they were not required to show that Proskauer committed an act of moral turpitude, and the statute of limitation tolled because Proskauer remained silent during the IRS audit. However, even assuming arguendo that the Appellants shared a fiduciary relationship that persisted beyond Proskauer's issuance of the opinion letter, there was sufficient evidence that the Appellants, exercising ordinary care, should have been on notice regarding the issues surrounding the distressed debt

---

[20] *Cochran Mill Assocs. v. Stephens*, 286 Ga. App. 241, 245 (1) (648 SE2d 764) (2007).

[21] *Goldston v. Bank of Am. Corp.*, 259 Ga. App. 690, 695 (577 SE2d 864) (2003) (punctuation and footnotes omitted).

10

strategy. Specifically, former accountants from the Appellants' own accounting firm pled guilty to charges relating to tax shelters, and there were several public stories covering challenges to these types of arrangements. Additionally, the Appellants were aware that Proskauer and BDO shared some relationship (as Proskauer had informed them it advised BDO on certain matters), even if they were not aware that Proskauer was advising BDO specifically on the distressed debt strategy. "Though the level of diligence required by the plaintiff[s] in investigating the fraud is lessened where a confidential relationship exists, it is not entirely extinguished."[22] Thus, the Appellants failed to meet their burden of showing grounds existed to toll their claims.[23]

3. The Appellants also assert that the trial court erred by granting Proskauer's motion for a protective order, thereby denying them the opportunity to conduct the discovery necessary to support their case.

---

[22] *Smith v. Suntrust Bank*, 325 Ga. App. 531, 544 (2) (b) (754 SE2d 117) (2014) (citation and punctuation omitted).

[23] See *Falanga v. Kirschner & Venker, P.C.*, 286 Ga. App. 92, 95 (1) (a) (648 SE2d 690) (2007) ("[A] lawyer who is sued for actual fraud may, when claiming that the limitation period has run, rely upon the plaintiff's duty to exercise ordinary care and diligence to discover the fraud, even though a confidential relationship exists.") (citation and punctuation omitted).

"It is well settled that the conduct of discovery is within a trial court's broad discretion[.]"[24] Here, the Appellants sent several discovery requests to Proskauer during the time permitted by the court for submitting evidence. Although the court issued an order limiting the discovery requests, it still permitted the Appellants to gather, inter alia, information surrounding what Proskauer knew about the distressed debt strategy when it issued the opinion letter. Because these requests still allowed the Appellants access to evidence related to the key facts at issue, the trial court did not abuse its broad discretion in granting Proskauer's motion.[25]

4. The Appellants argue that the trial court abused its discretion when it denied their motions to strike Proskauer's motion for summary judgment and the affidavit of David Lekerkramer, a partner at Proskauer.

Under OCGA § 9-11-12 (f), a court may sua sponte at any time or upon motion made within 30 days after the service of the pleading "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Here, the Appellants filed the motion to strike on January 5, 2018, even though the motion for summary judgment was served on November 16,

---

[24] *Exxon Corp. v. Thomason*, 269 Ga. 761, 763 (3) (504 SE2d 676) (1998).

[25] See *Dagel v. Lemcke*, 245 Ga. App. 243 (537 SE2d 694) (2000).

2017. Thus, as the matter was filed beyond the 30-day deadline imposed by OCGA § 9-11-12 (f), the motion was untimely, and the trial court did not abuse its discretion in denying it.

Turning now to the Appellants' motion to strike Lederkramer's affidavit, Georgia law states, "[o]nly such portion of an affidavit that sets forth facts that are admissible in evidence can be considered."[26] As stated in OCGA § 9-11-56 (e), "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in the evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Here, Lederkramer filed an affidavit that addressed, inter alia, publically available information regarding the scrutiny that similar tax shelters and BDO were receiving around the time the Appellants were being audited, as well as several news stories regarding the same. Although Lederkramer's affidavit referenced attachments of publically available information regarding BDO's involvement with tax shelters and other similar news stories, this did not constitute inadmissable hearsay because it showed that the information was widely available and was not offered for the truth

---

[26] *Roberson v. Ocwen Fed. Bank FSB*, 250 Ga. App. 350, 352 (2) (553 SE2d 162) (2001).

13

of the matter asserted.[27] Therefore, this information would have been admissible evidence.

Further, the majority of Lederkramer's affidavit speaks to what was publicly available and the facts surrounding the case. Therefore, the issues discussed in the affidavit do not fall outside of Lederkramer's personal knowledge, and thus the trial court did not abuse its discretion.

For the reasons stated above, we affirm the trial court's ruling.

*Judgment affirmed. Doyle, P. J., and Brown, J., concur.*

---

[27] See *Jones v. State*, 339 Ga. App. 95, 102-103 (2) (791 SE2d 625) (2016).